UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JAMES FASOLI, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:11-CV-00767 (CSH) |
| v. | : | |
| | : | |
| CITY OF STAMFORD, | : | |
| ERNEST ORGERA, | : | |
| MICHAEL SCACCO, | : | |
| MICHAEL LAROBINA and | : | SEPTEMBER 13, 2013 |
| TANIA BARNES, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
BY ATTORNEY MICHAEL LAROBINA**

DEFENDANT,
MICHAEL LAROBINA

By:    /s/ Jonathan C. Sterling
James M. Sconzo (ct04571)
Jonathan  C. Sterling (ct24576)
JORDEN BURT LLP
175 Powder Forest Drive, Suite 301
Simsbury, CT 06089-9658
Tel:  (860) 392-5000
Fax:  (860) 392-5058
E-mail:   jms@jordenusa.com
js@jordenusa.com

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................- 1 -

II. FACTUAL BACKGROUND ..................................................................- 1 -

    A. The Parties ................................................................................- 1 -

    B. Alleged Sexual Harassment Of A Female Co-Worker ....................................- 3 -

    C. Plaintiff's Allegations Regarding Misuse And Theft Of City Property ............- 4 -

    D. Plaintiff's Allegations Regarding Nepotism In The Personnel Division...........- 5 -

    E. Mr. Scacco's Ethics Complaint..........................................................- 6 -

    F. The Alleged Retaliatory And Discriminatory Actions ......................................- 7 -

    G. The Complaint ..................................................................................- 8 -

III. LAW AND ARGUMENT ..................................................................- 8 -

    A. Legal Standard For A Motion For Summary Judgment ....................................- 8 -

    B. Plaintiff's Free Speech Claims Fail. .......................................................- 9 -

        1. Attorney Larobina Had No Personal Involvement Whatsoever ............- 9 -

        2. Attorney Larobina Is Entitled To Qualified Immunity .......................- 12 -

        3. The Evidence Does Not Support Plaintiff's Claims ..........................- 15 -

    C. Plaintiff's Section 1983 Conspiracy Claim Fails As Well.............................- 20 -

    D. Plaintiff's IIED Claim Fails Because There Was Not Extreme Or Outrageous Conduct...............................................................................- 20 -

    E. Attorney Larobina Is Entitled To Summary Judgment On The Plaintiff's Demand For Punitive Damages ..................................................................- 24 -

IV. CONCLUSION..................................................................................- 25 -

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................................................13,14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..............................................................8

*Anobile v. Pelligrino*, 303 F.3d 107 (2d Cir. 2002) ..................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................................10,11,12

*Beiter v. Runyon*, 50 Fed.Appx. 32 (2d Cir. 2002) ..................................................................18

*Bellamy v. Mount Vernon Hosp.*, 07 Civ. 1801, 2010 WL 2838534
(S.D.N.Y. Jun. 26, 2009), aff'd. 387 Fed.Appx. 55 (2d. Cir 2010)............................................10

*Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999) .......................................................8

*Burns v. Bd. of County Com'rs of Jackson County*, 330 F.3d 1275 (10th Cir. 2003)................19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................................8

*Clark County School District v. Breeden*, 532 U.S. 268 (2001)................................................19

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004) ..............................................................................17

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ......................................................................10

*Davis v. Scherer*, 468 U.S. 183 (1984) ...................................................................................13

*Deters v. Lafuente*, 368 F.3d 185 (2d Cir. 2004) .................................................................16,17

*Droz v. McCadden*, 580 F.3d 106 (2d Cir. 2009) ....................................................................20

*Ehrlich v. Town of Glastonbury*, 348 F.3d 48 (2d Cir. 2003)...................................................13

*Farid v. Ellen*, 593 F.3d 233 (2d Cir. 2010) .............................................................................9

*Ford v. Veterinary Centers of America, Inc.*, No. 00-4604, 2001 WL 1152948
(E.D.Pa Sep. 14, 2011)..............................................................................................................25

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ................................................................................0

*Greenhouse v. Yale University*, No. 3:05CV1429 (AHN), 2006 WL 473724
(D.Conn. Feb. 28, 2006) ......................................................................................................21,22

*Guzman v. City of New York*, No. 10 Civ. 1048, 2011 WL 2652572 (S.D.N.Y. Jul. 7, 2011)......11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................................................13

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733 (2d Cir. 2003) .........................................................9

*Huminski v. Corsones*, 386 F.3d 116 (2d Cir. 2004) ................................................................14

*International Action Ctr. v. United States*, 365 F.3d 20 (D.C. Cir. 2004)..............................13,14

*Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996)..........................................................................24

*Marczeski v. Brown*, No. 3:02–CV–894(GLG), 2002 WL 31682175
(D.Conn. Nov. 12, 2002) ..........................................................................................................23

*Martin v. Town of Westport*, 329 F.Supp.2d 318 (D.Conn. 2004)...............................................8

*Martinez v. California*, 444 U.S. 277 (1980)..............................................................................9

*Martinez v. Simonetti*, 202 F. 3d 625 (2d Cir. 2000) ...............................................................13

*Mendoza v. Block*, 27 F.3d 1357 (9th Cir. 1994)......................................................................12

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ............................................................................12,13

*Morisseau v. DLA Piper*, 532 F.Supp.2d 595 (S.D.N.Y. 2008) ................................................18

*Morris v. Lindau*, 196 F.3d 102 (2d Cir. 1999) .......................................................................17

*Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977)............16

*Perry v. Clinton*, 831 F.Supp.2d, 1 (D.D.C. 2011) ..................................................................18

*Pickering v. Board of Ed. of Township H.S. Dist. 205, Will County*, 391 U.S. 563 (1968) ..........9

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002) ..........................................................................15

*Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79 (1st Cir. 2006)..........................................17

*Saucier v. Katz*, 533 U.S. 194 (2001) .................................................................................13,14

## TABLE OF AUTHORITIES

**Page**

*Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ................................................20

*Slattery v. Swiss Reins. Amer. Corp.*, 248 F.3d 87 (2d Cir. 2001)................................18

*Spear v. Hugles*, No. 08–4026, 2009 WL 2176725 (S.D.N.Y. Jul. 20, 2009)...............10

*Tavarez v. Naugatuck Bd. of Educ.*, No. 3:08-cv-725(CSH), 2012 WL 1435284
(D.Conn. Apr. 25, 2012) ..........................................................................................20,24

*Valenti v. Carten Controls Inc.*, No. CIV. 3:94CV1769 AHN, 1997 WL 766854
(D.Conn. Dec. 4, 1997)...............................................................................................23

*Vinci v. Quagliani*, 889 F.Supp.2d 348 (D.Conn. 2012) .............................................16

*Warren v. Dwyer*, 906 F.2d 70 (2d Cir. 1990).............................................................12

*Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004)................................16

*Williams v. Deloitte Servs., LP*, No. 3:09cv17(JCH),
2009 WL 3571365 (D.Conn. Oct. 26, 2009) ................................................................22

*Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552 (S.D.N.Y. 2005) .......................19

*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995)................................................13

*Zherka v. Amicone,* 634 F.3d 642 (2d Cir. 2011) ...........................................................9

## STATE CASES

*Appleton v. Board of Education*, 254 Conn. 205 (2000) ...............................................22

*Bator v. Yale-New Haven Hospital*, 73 Conn.App. 576 (2002) ....................................23

*Berry v. Loiseau*, 223 Conn. 786 Conn. 811 (1992).....................................................25

*Delaney v. Institute of Living, et al.*, No. CV020097157S, 2002 WL 1559043,
32 Conn. L. Rptr. 336 (Conn.Super. Jun. 18, 2002).....................................................23

*Dollard v. Board of Education*, 63 Conn.App. 550 (2001) ..........................................22

*Morrissey v. Yale University*, 268 Conn. 426 (2004) ...................................................21

*Nelson v. Yale University*, No. CV010455318, 39 Conn. L. Rptr. 69, 2005 WL 1089168
(Conn. Super. Apr. 5, 2005).........................................................................................21

*Petyan v. Ellis*, 200 Conn. 243 (1986) .....................................................................20,21

*Scandura v. Friendly Ice Cream Corporation*, No. CV 930529109S, 1996 WL 409337
(Conn.Super. Jun. 26, 1994) .......................................................................................23

*Valencia v. St. Francis Hosp. & Med. Ctr.*, No. CV 940538867S, 1996 WL 218760
(Conn.Super. Apr. 3, 1996) .........................................................................................23

## STATUTES

42 U.S.C. § 1983........................................................................................... passim

## OTHER AUTHORITIES

Prosser & Keeton, Torts, § 12 at 60 (5th ed. 1984) ....................................................21

Fed. R. Civ. P. 56 ..........................................................................................................8

The Defendant, Attorney Michael Larobina ("Attorney Larobina"), has moved for summary judgment on the two counts asserted against him in Plaintiff's Amended Complaint (the "Complaint").[1]  As set forth below,[2] there are no genuine issues of material fact in dispute, and Attorney Larobina's Motion for Summary Judgment should be granted.

## I.      PRELIMINARY STATEMENT

Attorney Larobina's inclusion in this lawsuit is outrageous and an abuse of process. There is no question that Attorney Larobina had no involvement whatsoever in any of the issues Plaintiff alleges in his Complaint.  Plaintiff has unequivocally admitted under oath he has no evidence suggesting otherwise.  Plaintiff has admitted that he has no evidence that Attorney Larobina took any action against him or failed to take action that he should have taken. Although Plaintiff claims Attorney Larobina retaliated against him for exercising free speech, he admits he has no evidence that Attorney Larobina was even aware of the alleged free speech at issue.  In point of fact, until this lawsuit, Attorney Larobina did not even know who Plaintiff was.  Accordingly, the Court should enter summary judgment in Attorney Larobina's favor as to all claims against him in the Complaint.

## II.     FACTUAL BACKGROUND

### A.      The Parties

The City of Stamford ("the City") is a municipal corporation organized under Connecticut law, and the Honorable Michael Pavia is the City's Mayor.  (Complaint, ¶ 9.)  On or about November 25, 2005, the City hired Plaintiff to be a Vehicle Mechanic in the City's Vehicle Maintenance Department, which is within the City's Office of Operations.  (Complaint, ¶¶ 8,

---

[1] Defendants Michael Scacco and Ernest Orgera are represented by separate counsel and the claims against those individuals are addressed in the memoranda supporting their motions for summary judgment. The Defendant City of Stamford is also represented by the undersigned counsel, and has filed a separate motion for summary judgment.
[2] Attorney Larobina also incorporates by reference the arguments set forth in the summary judgment briefs of the Co-Defendants.

18.)  On December 1, 2009, Mayor Pavia appointed Attorney Larobina as the City's Corporation Counsel and Director of the Office of Legal Affairs, which encompasses the Law Division and Human Resources Division.  (Complaint, ¶¶ 14-15; Deposition of Michael Larobina, "Larobina Dep.," attached as Exhibit A, p. 28.).  According to Plaintiff, and pursuant to Section C5-20-7 of the Stamford City Charter, the "Director of Legal Affairs or his designee shall be responsible for the supervision of all personnel functions of the City, including all labor negotiations and other matters affecting civil service employment, collective bargaining and employees of the City." (Complaint, ¶ 16; Exhibit B.)  This Charter provision is the primary, if not sole, basis for Plaintiff's claims against Attorney Larobina.  There is no evidence, or even allegation, that Attorney Larobina personally engaged in any conduct, or made any decision, giving rise to any civil rights violation or intentional tort.  Until the Complaint was filed, Attorney Larobina did not even know who Mr. Fasoli was.  (Larobina Dep., pp. 29, 65.)  Plaintiff has admitted he has no evidence that Attorney Larobina: Was involved with any of the decisions affecting his employment; failed to act; had a duty to intervene on Plaintiff's behalf; or received any complaints from Plaintiff.  (Deposition of Plaintiff, "Pl. Dep.," attached as Exhibit C, pp. 471-72, 478.)  Plaintiff testified:

> Q.    Did Mr. Larobina make any of the decisions that related to discipline that was meted out to you?
>
> -----
>
> A.    I don't know.
>
> Q.    Was Mr. Larobina consulted on any disciplinary decisions?
>
> -----
>
> A.    Not by me. I don't know who else consulted him.
>
> Q.    Was Mr. Larobina consulted about any pre-disciplinary hearings, to your knowledge? You can say I don't know if you don't know.
>
> A.    I don't know. I've never seen anything that was sent to him, no.

Q.      Did you make any complaints to Mr. Larobina?

A.      I made a Human Rights complaint to the city, to I guess Corporation
        Counsel, but to Mr. Larobina directly, no.

(Pl. Dep., pp. 471-72.)

XXXXX

Q.      All right. I had asked you earlier if you knew of any decisions that Mr.
        Larobina had either made or consulted on regarding you, and you said you
        didn't know; right?

A.      Right; yes.

Q.      Are there any decisions that were made that you feel like Mr. Larobina
        should have intervened to do something about?

A.      I don't know.

Q.      Is there any action that you feel like Mr. Larobina should have taken that
        he didn't take?

A.      I don't know.

(Pl. Dep., p. 478.)  Indeed, Attorney Larobina did not become involved with issues

pertaining to individual employees.  (Larobina Dep., p. 120.)

### B.     Alleged Sexual Harassment Of A Female Co-Worker

Plaintiff alleges that in April 2008 he became aware of sexually harassing conduct

directed toward a female co-worker, Charlene MacArthur.  (Complaint, ¶¶ 21-24.)  Plaintiff

alleges that on or about April 3, 2008, he wrote a letter to the City complaining of the alleged

harassment, and that later he verbally brought this issue to the attention of the City's former

Director of Operations, Benjamin Barnes.  (Complaint, ¶ 25.)  This letter was also signed and

submitted by the President of Plaintiff's union (and a co-worker), John Perkins.  (Pl. Dep., pp.

524-25.)  Attorney Larobina was not employed by the City until almost two years after this issue

was raised by Plaintiff.  (Larobina Dep., p. 28; Fasoli Dep., p. 778.)

- 3 -

**C.       Plaintiff's Allegations Regarding Misuse And Theft Of City Property**

Plaintiff alleges that during his employment he observed a pattern of illegal and/or improper activity, including: City workers selling City-owned surplus scrap metal and keeping the proceeds for their private use, or for employee parties; unsafe working conditions; waste and mismanagement with respect to the sale, purchase and repairs of certain City-owned trucks including questionable transactions surrounding the purchase of several trucks.  (Complaint, ¶ 33.)

With regard to the scrap metal issue, Plaintiff alleges that he reported these activities to Joseph Tarzia, the now former Chairman of the City's Board of Finance, Salvatore Gabriele, a member of the City's Board of Representatives, and the Federal Bureau of Investigation ("FBI").  (Complaint, ¶ 34.)  Plaintiff claims that his report to Messrs. Gabriele and Tarzia occurred in April 2010.  (Pl. Dep., pp. 68, 602-03.)  Plaintiff has admitted he did not report the issue to Attorney Larobina, and there is no evidence that Attorney Larobina had knowledge of Plaintiff's supposed reports to others.  (Pl. Dep., pp. 604, 607-08; Affidavit of Attorney Larobina, "Larobina Aff.," attached as Exhibit D, ¶ 4.)

Plaintiff has alleged that, in 2008 or 2009, he made two or three complaints about workplace safety to an employee in the City's risk management department.  (Pl. Dep., pp. 99-100.)  At the times alleged, Attorney Larobina had not yet begun working for the City.

Plaintiff alleges that on May 19, 2010, he attended a Board of Representatives meeting and spoke out against the City's purchase of several used Mac trucks.  (Complaint, ¶¶ 38-39.)  After May 19, 2010, Plaintiff did not again raise the truck issue.  (Pl. Dep., p. 163.)  Attorney Larobina had no knowledge of this alleged speech prior to the filing of the Complaint.  (Larobina Aff., ¶ 5.)

### D.    Plaintiff's Allegations Regarding Nepotism In The Personnel Division

Plaintiff also alleges that he observed nepotism and special treatment given to friends and family of Tania Barnes, who was a human resources generalist in the City's Personnel Division.[3] Plaintiff alleges that in February 2010, he learned about an opening for the position of Traffic Violations Officer with Special Police Powers that Ms. Barnes filled on a "provisional basis" with her brother, George Rodriguez.  (Complaint, ¶ 85.)  Plaintiff has since testified that he does not know who made the hiring decision, but claims only that Ms. Barnes was involved in processing the paperwork.  (Pl. Dep., pp. 661-62.)  According to Plaintiff, this provisional hiring violated his union's collective bargaining agreement because the job announcement was supposed to be have been made public, and the position first should have been offered to someone within his union.  (Complaint, ¶¶ 86-88.)  Plaintiff further claims that the hiring of Mr. Rodriguez violated the City's Ethics Code.  (Complaint, ¶¶ 94-95.)  Plaintiff also claims that by signing a payroll action form ("PAF"), Ms. Barnes violated the City Charter.  (Complaint, ¶¶ 96-97.)  Plaintiff alleges that he reported this matter to Messrs. Tarzia and Gabriele.  (Complaint, ¶ 89.)  However, at his deposition, Plaintiff testified that he only mentioned the concern to Mr. Gabriele in the hallway during a Republican Town Committee meeting, and does not know whether Mr. Tarzia even heard it.  (Pl. Dep., pp. 596-97.)  Plaintiff admits that he has no evidence that Attorney Larobina knew that Plaintiff reported these concerns to Messrs. Gabriele and/or Tarzia.  *Id*. at 601.  Attorney Larobina did not know that Plaintiff made the report to Messrs. Gabriele and/or Tarzia.  Plaintiff also admits he does not know if there is any causal connection between any discipline he received and his alleged report of alleged nepotism.  *Id*. at 760-61.

---

[3] Plaintiff has voluntarily dismissed his claims against Ms. Barnes.  Inexplicably, Plaintiff has refused to dismiss the claims against Attorney Larobina even though he had no direct involvement in anything Plaintiff complains about and even though counsel for Attorney Larobina had demanded Plaintiff withdraw the claims.

Plaintiff alleges that Mr. Tarzia launched his own investigation of Ms. Barnes' hiring, and on or about April 19, 2010, Mr. Tarzia obtained from the City's Office of Policy and Management a copy of the PAF related to the provisional hiring of Mr. Rodriguez.  (Complaint, ¶ 100.)  The PAF is allegedly dated January 27, 2010, and reflects Ms. Barnes' signature in the box marked "Personnel Director."  (Complaint, ¶ 101.)  Plaintiff claims that Mr. Tarzia also requested the PAF directly from the City human resources department.  (Complaint, ¶ 102.)  Plaintiff alleges that, on April 21, 2010, Mr. Tarzia received a copy of the PAF that was signed by Attorney Larobina and dated January 28, 2010.  (Complaint, ¶ 103.)  According to Plaintiff, Attorney Larobina "back-dated" his signature on the PAF in an apparent effort to cover up the allegedly illegal hiring of Mr. Rodriguez by the Personnel Division.  (Complaint, ¶ 104.)  However, the evidence demonstrates that Attorney Larobina separately signed the PAF on January 28, 2010, and does not support a claim that Attorney Larobina "back-dated" the PAF.  (Larobina Dep., p. 105-06; Exhibit 8 from Larobina Dep., attached as Exhibit E.)  Nevertheless, Plaintiff has no evidence that Attorney Larobina even knew Plaintiff raised the hiring issue with Mr. Tarzia nor does Plaintiff have any evidence that Attorney Larobina's signing of the PAF had anything to do with Plaintiff's job or Plaintiff's report of the hiring to Mr. Tarzia.  (Pl. Dep., p. 601.)

### E.       Mr. Scacco's Ethics Complaint

Plaintiff further claims that, in May of 2010, Mr. Scacco, the City's Fleet Maintenance Manager, filed an ethics complaint against Messrs. Tarzia and Gabriele.  (Complaint, ¶ 72.)  Plaintiff has alleged that he was retaliated against for his "[a]nticipated testimony in either the Gabriel or Tarzia Board of Ethics hearings."  (Complaint, ¶ 145f.)  However, Plaintiff admitted that he "was never notified that [he] was going to be a witness."  (Pl. Dep., p. 16.)  Prior to the

filing of the Complaint, Attorney Larobina had no knowledge that Plaintiff was likely to be called to testify in this proceeding.  (Larobina Aff., ¶ 6.)

      **F.**      **The Alleged Retaliatory And Discriminatory Actions**

Plaintiff claims that, as a result of his allegedly speaking out about the issues described above, he was retaliated against in various ways.  He claims this retaliation took the form of unwarranted warnings and suspensions.  However, he has no evidence that Attorney Larobina was involved with any of the decisions affecting his employment, no evidence that Attorney Larobina failed to perform any act, and no evidence that Attorney Larobina had a duty to intervene on Plaintiff's behalf.  (Pl. Dep., pp. 471-72, 478; Larobina Aff., ¶ 7.)  Plaintiff also claims that he was wrongfully transferred to and from the Scofield Park worksite.  However, Attorney Larobina was not involved in either of the transfers.  (Pl. Dep., pp. 471-72, 478; Larobina Dep., pp. 64-65, 72-73.)  Plaintiff also complains about certain events occurring prior to December 2009, when Attorney Larobina was not yet employed by the City and could not possibly have been responsible.  Plaintiff further claims that his personnel file was accessed.  (Complaint, ¶ 131.)  However, in his deposition, Plaintiff clarified that he is complaining about his file allegedly being available from the City's Legal Department, upon request, for review.  (Pl. Dep., p. 608.)  Plaintiff "believes" that the Stamford Advocate, a newspaper, accessed it, but he has no evidence of this.  *Id*. at 609-611.  He claims that Ms. Barnes also accessed the file, but he does not know whether her access was permitted or not.  *Id*. at 610-11.  He further claims that Mr. Gabriele obtained a copy, but testified he does not know whether Mr. Gabriele was permitted access as a City elected official.  *Id*. at 611-12.  Plaintiff also claims that the City's Ethics Board obtained a copy, but does not know whether the Board is entitled to review City employee's personnel files.  *Id*. at 614-16.  Plaintiff testified he does not know whether Attorney Larobina was aware that his file had been accessed.  (*Id*. at 613; Larobina Aff., ¶ 8.)

### G.      The Complaint

Plaintiff's Complaint asserts the following two causes of action against Attorney Larobina:

| Count | Cause of Action |
|-------|-----------------|
| One | 42 U.S.C. § 1983, First Amendment Retaliation |
| Ten | Intentional Infliction of Emotional Distress ("IIED") |

Attorney Larobina is being sued only in his individual capacity.  (Complaint, ¶ 14.)  As set forth

below, Attorney Larobina is entitled to summary judgment on each of Plaintiff's claims.

## III.    LAW AND ARGUMENT

### A.      Legal Standard For A Motion For Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits ... show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56 (c).  To overcome a motion for summary judgment, a plaintiff

must offer specific support for his claims, not simply conclusory allegations.  *See Bickerstaff v.*

*Vassar College*, 196 F.3d 435, 451 (2d Cir. 1999); *Martin v. Town of Westport*, 329 F.Supp.2d

318, 325 (D.Conn. 2004).  To avoid summary judgment, Plaintiffs "may not rest upon mere

allegations or denials… [instead they] must set forth specific facts showing that there is a

genuine issue for trial… [and provide] sufficient evidence supporting the claimed factual

dispute."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Summary judgment "is

properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed to secure just, speedy and inexpensive

determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**B.      Plaintiff's Free Speech Claims Fail.**

In Count One, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges a claim of First Amendment retaliation.  The First Amendment of the United States Constitution states that "Congress shall make no law … abridging the freedom of speech… ."  Among other things, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). This right is not absolute.  As the United States Supreme Court has repeatedly observed, a balance must be struck "between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services through its employees." *Pickering v. Board of Ed. of Township H.S. Dist. 205, Will County*, 391 U.S. 563, 568-69 (1968).  As set forth below, Plaintiff's free speech claims against Attorney Larobina fail for both factual and legal reasons.

**1.      Attorney Larobina Had No Personal Involvement Whatsoever.**

"To state a [First Amendment retaliation] claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone,* 634 F.3d 642, 644 (2d Cir. 2011) (citation omitted).  A defendant's conduct must be a proximate cause of the claimed violation in order to support a claim that the defendant deprived the plaintiff of his rights. *Martinez v. California,* 444 U.S. 277, 285 (1980).  It is "well settled" that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted). As a consequence, "the doctrine of *respondeat superior* ... does not suffice to impose liability for damages under Section 1983 on a defendant acting in a supervisory capacity." *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the U.S. Supreme Court made clear that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior." Id.* at 676. "Because vicarious liability is inapplicable to … Section 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Id.* (emphasis added). In reaching this conclusion, the U.S. Supreme Court explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," because that "conception of supervisory liability is inconsistent with [the principle that supervisors] may not be held accountable for the misdeeds of their agents." *Id.* at 677. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

Prior to *Iqbal*, the Second Circuit recognized five ways to demonstrate that a supervisory official could be personally involved in, and thus liable for, a violation of constitutional rights: (1) direct participation in the violation, (2) failing to remedy the violation after being informed of it by report or appeal, (3) creating a policy or custom under which the violation occurred, (4) gross negligence in supervising subordinates who committed the violation, (5) deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated. *Id.*, citing *Colon v. Coughlin,* 58 F.3d 865 (2d Cir. 1995). Post-*Iqbal*, district courts within the Second Circuit have held that at least the second, fourth, fifth and part of the third *Colon* factors are no longer good law. *See Spear v. Hugles*, No. 08–4026, 2009 WL 2176725, at *2 (S.D.N.Y. Jul. 20, 2009) ("[O]nly the first and third *Colon* factors survived the Supreme Court's decision in *Iqbal*."); *Bellamy v. Mount Vernon Hosp.,* 07 Civ. 1801, 2010 WL 2838534, at *6 (S.D.N.Y. Jun. 26, 2009) ("Only the first and part of the third *Colon* categories

- 10 -

pass *Iqbal's* muster – a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred.") aff'd. 387 Fed.Appx. 55 (2d. Cir 2010).  As such, after *Iqbal*, to demonstrate personal involvement, Plaintiff must prove that Attorney Larobina either (1) participated directly in the alleged Constitutional violation, or (2) created a policy or custom under which unconstitutional practices occurred.

    *Guzman v. City of New York*, No. 10 Civ. 1048, 2011 WL 2652572 (S.D.N.Y. Jul. 7, 2011), is instructive.  In *Guzman*, the plaintiff brought a Section 1983 civil rights claim against the Commissioner of Police alleging that he "failed to respond to [plaintiff's] grievances about police misconduct and malicious prosecution, instructed a subordinate to withhold [information], and promulgated a policy that promoted discriminatory and unconstitutional conduct by police officers against racial minorities and persons of low income."  Citing *Iqbal*, the district court found that the plaintiff had not asserted that the commissioner was "*personally involved* in the police or prosecutorial misconduct..." and "[t]o the extent that [plaintiff's] claims rest on allegations that [the commissioner] failed to respond or investigate [the plaintiff's] grievances, they must be dismissed for failure to allege a claim… ."  *Id*. at *3.

    The sworn deposition testimony of Plaintiff and Attorney Larobina and Attorney Larobina's Affidavit make clear that Attorney Larobina had no personal involvement in any of the allegedly retaliatory actions and did not create a policy or custom of unconstitutional practices.  Indeed, Plaintiff admitted he has no evidence that Attorney Larobina was involved in any of the disciplinary decisions affecting him.  (Pl. Dep., pp. 470-71; Larobina Aff., ¶ 7.) Plaintiff could not even point to any action that Attorney Larobina should have taken but did not. (Pl. Dep., p. 478.)  Nor did Plaintiff ever make any complaints to Attorney Larobina.  *Id*. at 470-

71.  Attorney Larobina did not even know who Plaintiff was until this lawsuit.  (Larobina Dep., pp. 29, 65.)  The Complaint likewise contains very few allegations that mention or concern Attorney Larobina, and none of those few allegations are sufficient to demonstrate that Attorney Larobina directly participated in any unconstitutional conduct or created a policy or custom that resulted in unconstitutional practices.  The only direct action or conduct Plaintiff alleges about Attorney Larobina is that Attorney Larobina allegedly "back-dated" a PAF for the hiring of George Rodriguez.  There is no evidence to support this claim.  Regardless, there is no evidence, or even allegation, that the alleged back-dating of the PAF form resulted in any violation of *Plaintiff's* constitutional rights, and clearly it did not.

Plaintiff has merely asserted that Attorney Larobina "supervised," was "responsible" for, or "knew" about the actions of others.  (Complaint, ¶¶ 90, 93, 115, 123, 131.)  Plaintiff is alleging a *respondeat superior* theory of liability, which *Iqbal* held was not viable.  Pursuant to *Iqbal*, Attorney Larobina is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

### 2.    Attorney Larobina Is Entitled To Qualified Immunity

Even if Plaintiff could somehow show personal involvement by him, Plaintiff's First Amendment retaliation claim would still fail because Attorney Larobina is entitled to qualified immunity.  Qualified immunity is more than a simple defense - it is "an entitlement not to stand trial or face the other burdens of litigation …an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The question of qualified immunity is an issue to be decided as a matter of law by the court.  *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990); *see Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) (pure question of law).

Under the qualified immunity doctrine, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. *Mitchell*, 472 U.S. at 524; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Martinez v. Simonetti*, 202 F. 3d 625, 632 (2d Cir. 2000).  Under this doctrine, a defendant's liability is not determined by whether he violated a plaintiff's constitutional rights, but rather whether his actions were objectively reasonable at the time; "[e]ven Defendants who violated constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (quoting *Davis v. Scherer*, 468 U.S. 183, 190 (1984)).

In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the U.S. Supreme Court ruled that the "requisites of a qualified immunity defense must be considered in proper sequence." *See Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 54-55 (2d Cir. 2003).  That sequence requires, as a threshold matter, consideration of the question of whether the officials' conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  "This must be the initial inquiry." *Id.*  In setting forth the sequenced approach to qualified immunity, the Supreme Court "speaks in mandatory terms -- lower courts *must* determine the violation before engaging in a qualified immunity analysis." *Ehrlich*, 348 F.3d at 55 (emphasis in original).

In determining whether the violation of a constitutional right has been alleged, the validity of the qualified immunity analysis "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *see also International Action Ctr. v. United States*, 365 F.3d 20, 25 (D.C. Cir. 2004).

Thus, at the first stage of the inquiry, courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning. *International Action*, 365 F.3d at 25.  For example, it does no good to allege that a public official violated the right to free speech, and then conclude that the right to free speech has been "clearly established" in this country since 1791.  *Id.*  Instead courts must define the right "to a degree that would allow officials reasonably to anticipate when their conduct may give rise to liability for damages."  *Id.* (citation, internal quotations and brackets omitted).

If a violation is established, "the next, sequential step is to ask whether the right was clearly established."  *Saucier*, 533 U.S. at 201.  The Second Circuit has described the process of determining whether a right was "clearly established" in *Huminski v. Corsones*, 386 F.3d 116, 151 (2d Cir. 2004).  In that case, the court recognized that a right is "clearly established [if its] 'contours…[are] sufficiently clear that a reasonable official would understand what he is doing violates that right.'"  *Id.*, quoting *Anderson*, 483 U.S. at 640.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law *the unlawfulness must be apparent*."  *Id.* (emphasis added, internal quotation marks omitted.)  That is, the right must be defined with "reasonable specificity."  *Id.* (citation and internal quotation marks omitted).  "In performing this analysis, [courts within the Second Circuit] look to the established law of the Supreme Court and of [the Second Circuit and Connecticut] at the time of the defendants' actions."  *Id.; see Anobile v. Pelligrino*, 303 F.3d 107, 125-26 (2d Cir. 2002).

Under the final step of the analysis, even if a plaintiff demonstrates that a defendant violated a clearly established law, a defendant is entitled to qualified immunity if a reasonable official could have believed that his actions were lawful in light of clearly established law and

the circumstances confronting him. *Poe v. Leonard*, 282 F.3d 123, 146 (2d Cir. 2002). A district court errs by "not conducting the legal inquiry necessitated by the defense of qualified immunity, which requires that a court determine whether under the plaintiff's version of the facts, reasonable officers in the defendant's position could disagree as to the legality of his actions." *Id.*

Plaintiff's admissions that Attorney Larobina was not personally involved in conduct that violated a clearly established constitutional right renders his First Amendment retaliation claim deficient, and entitles Attorney Larobina to qualified immunity. Plaintiff's admissions also make clear that Attorney Larobina did not engage in any objectively unreasonable conduct. The mere fact that Attorney Larobina was the City's Director of Legal Affairs cannot establish that he acted unreasonably or that his conduct violated Plaintiff's constitutional rights. The only action allegedly undertaken by Attorney Larobina was the so-called "back-dating" of a PAF hiring form. The evidence does not support that this occurred. However, whether this occurred or not is immaterial because there is no evidence to show that Attorney Larobina's action with respect to the PAF gives rise the violation of any clearly established constitutional right. Even if Attorney Larobina back-dated a PAF hiring form (which he did not), Plaintiff has not provided any evidence to establish that his allegedly doing so was objectively unreasonable. Accordingly, Attorney Larobina is entitled to qualified immunity and summary judgment on Plaintiff's First Amendment retaliation claim.

### 3. The Evidence Does Not Support Plaintiff's Claims.

Even if Plaintiff could somehow show that Attorney Larobina had personal involvement and was not entitled to qualified immunity, the Section 1983 claim against him would still fail on its merits.

> In order to survive a motion for summary judgment on a First Amendment retaliation claim, a plaintiff who is a government employee must present evidence which demonstrates: (1) that the speech at issue was protected; (2) that the plaintiff suffered an adverse employment action; and (3) that there was a causal connection between the allegedly protected speech and the adverse employment action.

*Vinci v. Quagliani*, 889 F.Supp.2d 348, 354 (D.Conn. 2012).  Plaintiff must "aver some 'tangible proof'" that h[is] protected speech actually was a "substantial motivating factor" in the alleged adverse employment action.  *Washington v. County of Rockland*, 373 F.3d 310, 320-321 (2d Cir. 2004); *Deters v. Lafuente*, 368 F.3d 185, 190 (2d Cir. 2004).  Even if a plaintiff succeeds in showing these factors, his employer may nonetheless escape liability and prevail on a motion for summary judgment if the employer is able to establish that the same adverse employment action would have occurred "even in the absence of the protected speech."  *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

Plaintiff cannot survive summary judgment because not all of his speech was protected; several of the actions he complains of (which Attorney Larobina had nothing to do with) were not materially adverse employment actions;[4] and, in any event, there is no evidence supporting a causal connection between those actions and any of his speech.

In order to prove the third element of a First Amendment retaliation claim, a government employee plaintiff must establish "a causal connection between defendants' allegedly retaliatory conduct and [the plaintiff's] protected speech."  *Washington*, 373 F.3d at 320-21.  While a government employee pleading a First Amendment retaliation action "can establish the causal connection between protected expression and an adverse employment determination indirectly by showing that the protected activity was followed [either] by adverse treatment in employment,

---

[4] Attorney Larobina hereby incorporates by reference the arguments made in the City's brief as to why certain of Plaintiff's alleged free speech was not protected and certain alleged employment actions were not materially adverse.

or directly by evidence of retaliatory animus," courts in this Circuit nonetheless have held that a plaintiff may not solely "rely on conclusory assertions of retaliatory motive to satisfy the causal link."  *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004) (citing *Morris v. Lindau*, 196 F.3d 102, 110–11 (2d Cir. 1999) (abrogated on other grounds) (internal quotations omitted)). A plaintiff must therefore provide the Court with "some tangible proof to demonstrate that [his] version of what occurred was not imaginary."  *Id*. (emphasis added).  "[W]ide-ranging speculation about what may have motivated" a defendant employer to act is, "[w]ithout some proof in the record [of] retaliatory animus toward" the plaintiff and without any "evidence to contradict [a defendant's] testimony" to the contrary, simply insufficient to make a First Amendment retaliation claim.  *Deters*, 368 F.3d at 190.

The evidence proves there was no causal connection between Plaintiff's alleged protected activity and any action that Attorney Larobina took or failed to take.  First and foremost, Plaintiff has admitted he has no evidence that Attorney Larobina even knew about his alleged protected activities.  (Pl. Dep., pp. 596-601; 607-08.)  As such, there can be no causal connection between these complaints and the allegedly retaliatory acts.  *See Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 85 (1st Cir. 2006) (affirming summary judgment on retaliation claim stating "[t]here is no evidence that Vargas, the CTI employee who discharged Pomales, had any knowledge that Pomales complained to Rodney Rodríguez about Peter Rodríguez's conduct." and citing cases holding evidence that decision-maker knew of protected activity required to prove retaliation claim).  Moreover, Attorney Larobina was never involved in any employment decisions affecting Plaintiff.  (Larobina Aff., ¶ 7.)  Therefore, there could be no causal connection between any alleged free speech and any action (or inaction) by Attorney Larobina.

Furthermore, Plaintiff has not claimed that Attorney Larobina was implicated by his complaints, giving Attorney Larobina absolutely no reason to retaliate against Plaintiff.  Plaintiff has not alleged that Attorney Larobina stole scrap metal, harassed Ms. MacArthur, or engaged in nepotism.  Plaintiff has even specifically admitted that Attorney Larobina did not retaliate against him for the Ms. MacArthur complaint.  (Pl. Dep., pp. 535-36.)  Attorney Larobina was not even employed by the City at the time that Plaintiff made his report regarding Ms. MacArthur.  Attorney Larobina simply would have no reason to retaliate against Plaintiff for complaining about things he had nothing to do with, and summary judgment should enter on this basis.  *See, e.g., Beiter v. Runyon*, 50 Fed.Appx. 32, 36 (2d Cir. 2002) (summary judgment on retaliation claim where employee claimed supervisors retaliated against her based on a her complaint about a different employee); *Perry v. Clinton*, 831 F.Supp.2d, 1, 24 (D.D.C. 2011) (holding no causal link established between protected activity and retaliation when plaintiff "provided no evidence or argument explaining why [supervisor] would decide to retaliate against her because she filed a complaint against someone else.").

Even before Plaintiff engaged in any of the alleged protected activity cited in his Complaint, he had a documented history of work-related problems dating back to 2007.  That pattern has, unsurprisingly, continued.  Nonetheless, the allegedly retaliatory actions all occurred after documented discipline.  Based on these facts, there can be no inference that any of the alleged protected activity caused the actions.  *See Slattery v. Swiss Reins. Amer. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 615

(S.D.N.Y. 2008) (complaints regarding plaintiff prior to plaintiff's complaint of discrimination precluded causal connection despite temporal proximity).

Furthermore, many of the allegedly retaliatory actions occurred long after the alleged protected activity.  Plaintiff claims that he was retaliated for his alleged protected activity months and years after engaging in it.  Such lengthy time gaps demonstrate that the alleged protected activity had nothing to do with his treatment.  *See, e.g., Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases dismissing retaliation claims where adverse employment action followed protected activity by three to four months); *Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation . . . . Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation.").  Thus, Plaintiff cannot claim that: the Ms. MacArthur complaint caused any acts occurring in the summer of 2008 or after; the scrap metal report caused any acts occurring in or after summer 2010; or that the alleged nepotism complaint caused any acts occurring in or after late Spring 2010.

With regard to the claim of retaliation for Plaintiff's report involving Ms. MacArthur, Mr. Perkins also signed that complaint.  However, Plaintiff concedes he has no evidence that either Mr. Perkins or Ms. MacArthur herself was ever retaliated against.  (Pl. Dep., pp. 39-40; 530-31.) These facts demonstrate that it was not this complaint that caused Plaintiff's treatment.  *See Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1287 (10th Cir. 2003) (no inference of causation on claim of retaliation for protected speech where other employee also spoke out publicly against department policies, but was not terminated).

Based on the above, no reasonable jury could find a causal connection with regard to any acts undertaken by Attorney Larobina, and the Court should enter summary judgment. *See Vinci*, 889 F.Supp.2d at 358-64 (granting summary judgment in 1983 free speech case for lack of evidence of a causal connection); *Tavarez v. Naugatuck Bd. of Educ.*, No. 3:08-cv-725(CSH), 2012 WL 1435284, at *3 (D.Conn. Apr. 25, 2012) (same).

### C.    Plaintiff's Section 1983 Conspiracy Claim Fails As Well.

Plaintiff has also alleged a "conspiracy" to violate his constitutional rights involving Attorney Larobina.  (Complaint, ¶ 145.)  For the reasons set forth above, that claim also fails. *See Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails.").  There is simply no evidence to support a conspiracy claim.  *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (reiterating that "conclusory allegations" or "unsubstantiated speculation" will not defeat summary judgment on § 1983 conspiracy claim).

### D.    Plaintiff's IIED Claim Fails Because There Was Not Extreme Or Outrageous Conduct.

In order to sustain a claim for IIED, a plaintiff must allege that (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of their conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of plaintiff's distress; and (4) the emotional distress sustained by plaintiff was severe.  *Petyan v. Ellis*, 200 Conn. 243, 253 (1986).  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."  *Id.*  Additionally, in the employment context, the Connecticut Supreme Court has found, "the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially

calculated to cause, and does cause, mental distress of a very serious kind." *Id.* at 254, n. 5

(quoting Prosser & Keeton, Torts, § 12 at 60 (5th ed. 1984)).

> Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Morrissey v. Yale University*, 268 Conn. 426, 428 (2004) (citation, internal quotation marks, and

brackets omitted.)  In this regard, "[e]mployees often find the conditions of their employment to

be unpleasant and even unjustifiable, but there is a distinction between the ordinary indignities of

the workplace and truly atrocious conduct [required to state a claim for IIED]." *Nelson v. Yale*

*University*, No. CV010455318, 39 Conn. L. Rptr. 69, 2005 WL 1089168, at *3 (Conn. Super.

Apr. 5, 2005) (plaintiff's allegations that her immediate supervisor publicly ridiculed her, caused

disciplinary action to be filed against her for minor errors, ordered her to file false reports and

interfered with her job duties were insufficient to meet element of extreme and outrageous

conduct while allegations that other defendant ordered plaintiff to beg for her job and then

immediately fired her were sufficient to meet this element).

　　　　None of Attorney Larobina's alleged conduct approaches anywhere near the threshold of

being "outrageous," "atrocious," or "utterly intolerable."  Attorney Larobina did not engage in

*any* conduct involving Plaintiff.  However, courts have held that the elements of this tort were

not satisfied even in cases with highly inappropriate conduct alleged.  For example, the

*Greenhouse v. Yale University*, No. 3:05CV1429 (AHN), 2006 WL 473724 (D.Conn. Feb. 28,

2006) court held that alleged behavior much worse than that claimed in the instant matter was

not actionable.  In *Greenhouse*, the plaintiff, a drama school student, claimed that her

> instructor...announced that he had changed the title [of a play] to "Metamorphoses Revisited Or Rock Out with Your Cock Out." And instructed the male actors to simulate masturbation while standing next to [Greenhouse].  This simulation actually occurred, to [her] great and obvious humiliation and distress, whereupon the instructor called out: "That was great! Now this time do it again, only really come!" As the male actor closest to [Greenhouse] began to simulate orgasm, [Greenhouse] fled the stage as another male student attempted to physically restrain her....
>
> [F]or the remainder of the academic year, the faculty and students subjected her to "macho" and "frat house" behavior and disparate treatment. Also, on one occasion, the Dean of the Drama School kissed her. On May 15, 2003, the Drama School finally dismissed Greenhouse, even though her work was "obviously superior to that of the male students in the program, none of whom were dismissed."

*Id.* at *2.  Noting that "[t]he court has an important gatekeeper function for such claims," this Court found that the defendant's conduct did not satisfy the requirement of extreme and outrageous conduct, and granted the defendant's motion to dismiss.  *Id.* at *3.

This decision is consistent with those of Connecticut state courts of all levels that require a very high showing to proceed on an intentional infliction of emotional distress claim, one that cannot be met in this case.  For example, in *Dollard v. Board of Education*, 63 Conn.App. 550, 552-53 (2001), the plaintiff alleged that the defendants hypercritically scrutinized every aspect of her work and personal life, publicly admonished her and organized a plan to force her to resign. Despite those allegations, this court determined that the defendants' actions did not constitute outrageous or extreme conduct.  *Id.* at 554.  In *Appleton v. Board of Education*, 254 Conn. 205 (2000), the court did not find extreme or outrageous conduct where the plaintiff was forced to resign, subjected to psychiatric evaluations, escorted off employer's premises by police and subjected to condescending comments made by the employer.  *See id*. at 211; *see also Williams v. Deloitte Servs., LP*, No. 3:09cv17(JCH), 2009 WL 3571365, at *3 (D.Conn. Oct. 26, 2009) (IIED claim dismissed because allegations of preferential treatment of white employees, unfair

disciplinary actions, unfair work assignments, negative performance reviews, and singling out

fell within the category of "routine employment actions" and thus did not rise to the level of

extreme or outrageous); *Bator v. Yale-New Haven Hospital*, 73 Conn.App. 576, 577-78 (2002)

(Court striking emotional distress claim where employee was allegedly subjected to abusive and

disparate treatment, including unfair pay and discipline, where supervisors falsely accused him

of endangering a patient's life, suggested that he seek psychiatric help and recommended that he

attend anger management classes.); *Delaney v. Institute of Living, et al.*, No. CV020097157S,

2002 WL 1559043, at *7, 32 Conn. L. Rptr. 336 (Conn.Super. Jun. 18, 2002) (motion to strike

granted on allegations that defendants: forced plaintiff to leave her job; subjected her to an

abusive and hostile work environment in which hostile glances, abusive language and

contemptuous behavior were the norm; constantly demeaned her in front of others; unjustly

criticized virtually every aspect of her work performance; falsely accused her of missing staff

meetings; and ordered to remove from her work area all articles of personal property including

religious objects); *Marczeski v. Brown*, No. 3:02–CV–894(GLG), 2002 WL 31682175, at *7

(D.Conn. Nov. 12, 2002) (no extreme and outrageous conduct where allegations included

assertions that plaintiff's vehicle was being followed); *Valenti v. Carten Controls Inc.*, No. CIV.

3:94CV1769 AHN, 1997 WL 766854, at *9 (D.Conn. Dec. 4, 1997) (no outrageous behavior

where plaintiff claimed defendants were "criticizing her work unjustly, speaking to her on

numerous occasions in a loud, angry, accusatory voice and pounding his fists, his demeaning

attitude towards her, and his frequent allusion to her option to quit if she was unhappy.");

*Valencia v. St. Francis Hosp. & Med. Ctr.*, No. CV 940538867S, 1996 WL 218760, at *8

(Conn.Super. Apr. 3, 1996) (no extreme and outrageous conduct found where defendant

"grabbed plaintiff's arm in front of patients and co-workers, pulled her in a back room and yelled

at her."); *Scandura v. Friendly Ice Cream Corporation*, No. CV 930529109S, 1996 WL 409337, at *3 (Conn.Super. Jun. 26, 1994) (no extreme/outrageous conduct where plaintiff alleged her supervisor was "making her furnish daily sales projections for the restaurant she managed, disallowing her from taking a scheduled vacation for which she had made airline reservations, and ridiculing her 'unjustifiably... often obscenely,' and in a manner which insulted her integrity, both before and after he learned that she suffered from a medical condition that made her particularly susceptible to emotional distress.").

Plaintiff has failed to even allege any conduct by Attorney Larobina that rises to the level of extreme or outrageous.  Plaintiff has even admitted that he has no evidence to support an IIED claim against Attorney Larobina.  (Pl. Dep., pp.  468-69, 470-71.)  Indeed, Plaintiff had admitted that Attorney Larobina had no involvement in any of the decisions affecting Plaintiff, and had no duty to act with respect to any of those decisions.  Throughout Plaintiff's only specific allegation involving Attorney Larobina was that he "back-dated" a PAF hiring form.  There is no evidence to support this claim, and, even if there were, this issue had nothing to do with Plaintiff and certainly cannot be considered extreme behavior.  Accordingly, because the Plaintiff's allegations do not, as a matter of law, rise to level of being extreme or outrageous, Defendants are entitled to summary judgment as to Count Ten.  *See Tavarez*, 2012 WL 1435284. at *6 (summary judgment because no evidence of outrageous conduct).

### E.    Attorney Larobina Is Entitled To Summary Judgment On The Plaintiff's Demand For Punitive Damages.

"Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' "  *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996).  With respect to Plaintiff's IIED claim, "in order to award punitive or exemplary

damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Berry v. Loiseau*, 223 Conn. 786, 811 (1992).  Courts have granted summary judgment on punitive damage claims where the elements of malice or reckless indifference are not present.  *See, e.g., Ford v. Veterinary Centers of America, Inc.*, No. 00-4604, 2001 WL 1152948 (E.D.Pa. Sep. 14, 2001) (summary judgment on punitive damages claim where there was no evidence that defendants were aware of plaintiff's federally protected rights or that they acted with a perceived risk that their conduct violated federal law).

Here, even if Plaintiff's claims against Attorney Larobina could somehow survive summary judgment, which they should not, the Court should enter summary judgment as to Plaintiff's punitive damages claim against him.  The evidence is clear that Attorney Larobina was not involved with any of the decisions affecting his employment and had no duty to intervene on Plaintiff's behalf.

## IV.    CONCLUSION

WHEREFORE, based on the foregoing reasons, Attorney Larobina'a Motion for Summary Judgment should be granted.


DEFENDANT,
MICHAEL LAROBINA


By:      /s/ Jonathan C. Sterling
James M. Sconzo (ct04571)
Jonathan C. Sterling (ct24576)
JORDEN BURT LLP
175 Powder Forest Drive, Suite 301
Simsbury, CT 06089-9658
Tel:   (860) 392-5000
Fax:  (860) 392-5058
E-mail:   jms@jordenusa.com
              js@jordenusa.com

## <u>CERTIFICATION</u>

This is to certify that on this 13th day of September 2013, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system:

Richard Freeth, Esq.
Freeth & Clay, LLP
1 Atlantic Street, Suite 320
Stamford, CT  06901
*Attorney for Plaintiff*

Lewis H. Chimes
Law Office of Lewis Chimes LLC
45 Franklin Street
Stamford, CT 06901
*Attorney for Michael Scacco*

Alan Neigher
Sheryle Levine
Byelas & Neigher
1804 Post Road East
Westport, CT  06880
*Attorney for Ernest Orgera*

                  /s/   Jonathan C. Sterling
                    Jonathan C. Sterling

264901