UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JAMES FASOLI, | : |  |
|  | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:11-CV-00767 (CSH) |
| v. | : |  |
|  | : |  |
| CITY OF STAMFORD, | : |  |
| ERNEST ORGERA, | : |  |
| MICHAEL SCACCO, | : |  |
| MICHAEL LAROBINA and | : | SEPTEMBER 13, 2013 |
| TANIA BARNES, | : |  |
|  | : |  |
| Defendants. | : |  |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
BY CITY OF STAMFORD</u>**

DEFENDANT,
CITY OF STAMFORD

By:     /s/ Jonathan C. Sterling
James M. Sconzo (ct04571)
Jonathan  C. Sterling (ct24576)
JORDEN BURT LLP
175 Powder Forest Drive, Suite 301
Simsbury, CT 06089-9658
Tel:  (860) 392-5000
Fax:  (860) 392-5058
E-mail:   jms@jordenusa.com
              js@jordenusa.com

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...................................................................- 1 -

II.  FACTUAL BACKGROUND .....................................................................- 1 -

  A.  The Parties ........................................................................................- 1 -

  B.  Alleged Sexual Harassment Of A Female Co-Worker .......................- 3 -

  C.  Plaintiff's Allegations Regarding Misuse And Theft Of City Property ............- 3 -

  D.  Plaintiff's Allegations Regarding Nepotism In The Personnel Division...........- 5 -

  E.  Mr. Scacco's Ethics Complaint..........................................................- 6 -

  F.  The Alleged Retaliatory And Discriminatory Actions ......................- 7 -

  G.  The Complaint ..................................................................................- 11 -

III.  LAW AND ARGUMENT .......................................................................- 11 -

  A.  Legal Standard For A Motion For Summary Judgment ...................- 11 -

  B.  Plaintiff's Free Speech Claims Fail. .................................................- 12 -

    1.  The Evidence Does Not Support Plaintiff's Claims ............- 13 -

    2.  Plaintiff's Section 1983 Conspiracy Claim Fails As Well..................- 20 -

    3.  Monell Precludes Plaintiff's First Amendment Claim Against The City.......................................................................................- 20 -

  C.  Plaintiff's 31-51m Claim In Count Three Fails ...............................- 23 -

  D.  Counts Four, Five, Seven And Eight Are Time-Barred...................- 25 -

  E.  The Evidence Refutes Plaintiff's Claims In Counts Four And Five.............- 27 -

  F.  Count Six Fails For A Variety Of Reasons.......................................- 27 -

  G.  Counts Seven And Eight Fail Because There Is No Evidence Of Age Discrimination..................................................................................- 29 -

  H.  Plaintiff's Intentional Tort Claims In Counts Nine And Ten Against The City Are Precluded By State Law And Must Be Dismissed..........................- 31 -

  I.  Plaintiff's Invasion Of Privacy Claim Fails....................................- 32 -

  J.  Plaintiff's IIED Claim Fails Because There Was No Extreme Or Outrageous Conduct.........................................................................- 34 -

  K.  Plaintiff's Indemnity Claims Fail.....................................................- 38 -

  L.  Plaintiff Cannot Claim Punitive Damages .......................................- 40 -

IV.  CONCLUSION........................................................................................- 41 -

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Albert v. City of Hartford*, 529 F.Supp.2d 311 (D.Conn. 2007) ..........................22
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................12
*Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841 (7th Cir. 2008) ....................14
*Avedisian v. Quinnipiac University*, 387 Fed.Appx. 59 (2d Cir. 2010)...................15
*Batista v. Rodriguez*, 702 F.2d 393 (2d Cir. 1983) .....................................22
*Beiter v. Runyon*, 50 Fed.Appx. 32 (2d Cir. 2002) ......................................18
*Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999) ...........................11
*Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997) ..........23
*Bracey v. Board of Education of Bridgeport*, 368 F.3d 108 (2d Cir. 2004) ..............12
*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) ..............15
*Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275 (10th Cir. 2003)............19,20
*Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F. Supp. 2d 233 (D.Conn. 2008)...............33
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................12
*Chang v. Safe Horizons*, 254 Fed.Appx. 838 (2d Cir. 2007)..............................15
*Chapman v. City of New York*, No. 06–CV–3153 (ENV)(JMA), 2011 WL 1240001
(E.D.N.Y. March 30, 2011) ...............................................................26
*Chin v. New York City Housing Authority*, 575 F.Supp.2d 5541 (S.D.N.Y. 2008).............21
*City of Canton v. Harris*, 489 U.S. 378 (1989).........................................21
*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)...........................40
*City of St. Louis v. Praprotnick*, 485 U.S. 112 (1988).................................22
*Clark County School District v. Breeden*, 532 U.S. 268 (2001)..........................19,29
*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004) ............................................16
*D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 91 (2d Cir.), cert. denied 534 U.S. 1066 (2001)....12
*Deepwells Estates Inc. v. Incorporated Village of Head of Harbor*, 973 F.Supp. 338
(E.D.N.Y. 1997), appeal dismissed, 162 F.3d 1147 (2d Cir. 1998)..........................40
*Deters v. Lafuente*, 368 F.3d 185 (2d Cir. 2004) ......................................13,16
*Dobrynio v. Cent. Hudson Gas & Elec. Corp.*, 419 F.Supp.2d 557 (S.D.N.Y. 2006).................30
*Droz v. McCadden*, 580 F.3d 106 (2d Cir. 2009) ........................................20
*Evarts v. Southern New England Telephone Co.*, No. 3:00CV1124 WIG, 2006 WL 2864716
(D.Conn. Oct. 2, 2006)..................................................................26
*Fincher v. County of Westchester*, 979 F. Supp. 989 (S.D.N.Y. 1997) ...................23
*Fried v. LVI Services, Inc.*, No. 10 Civ. 9308(JSR), 2011 WL 4633985
(S.D.N.Y. Oct. 4, 2011) ................................................................31
*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ............................................12
*Giordono v. Gerber Scientific Prod., Inc.*, No. 3:99CV00712 (EBB),
2000 WL 1838337 (D. Conn. 2000) ........................................................31
*Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992) ....................................25
*Graham v.. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) ..............................29
*Grant v. Pathmark Stores, Inc.*, No. 06 Civ. 5755(JGK), 2009 WL 2263795
(S.D.N.Y. Jul. 29, 2009) ...............................................................26
*Greenhouse v. Yale University*, No. 3:05CV1429 (AHN), 2006 WL 473724
(D.Conn. Feb. 28, 2006) ................................................................35,36
*Gross v. FBL Financial Services*, 557 U.S. --, 129 S.Ct. 2343 (2009).....................29
*Heil v. Santoro*, 147 F.3d 103 (2d Cir. 1998) .........................................16

## TABLE OF AUTHORITIES

**Page**

*Hodges v. Holder*, --- Fed.Appx. ----, 2013 WL 3836215 (2d Cir. Jul. 26, 2013) ......................28

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000), *cert. denied sub nom.*, 531 U.S. 813 (2000) ............21

*Lartey v. Shoprite Supermarkets, Inc.*, No. 08 Civ. 8272(PAC)(LMS), 2011 WL 2416880
(S.D.N.Y. Jun. 14, 2011) ...................................................................................................29,30

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007) ........................................25

*Looby v. City of Hartford*, 152 F.Supp.2d 181 (D.Conn. 2001) ................................................22,23

*Marczeski v. Brown*, No. 3:02–CV–894(GLG), 2002 WL 31682175
(D.Conn. Nov. 12, 2002) ...........................................................................................................37

*Martin v. Town of Westport*, 329 F.Supp.2d 318 (D.Conn. 2004)................................................11

*McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973) .........................................................29

*McMillan v. Monroe City*, 520 U.S. 781 (1997) .........................................................................22

*McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211 (2d Cir. 2006) .........................................27

*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) ....................................................22,23

*Miner v. Cheshire*, 126 F.Supp. 184 (D.Conn. 2000)..............................................................31,32

*M.O.C.H.A. Soc., Inc. v. City of Buffalo*, 199 F.Supp.2d 40 (W.D.N.Y. 2002)..........................40

*Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) ......................20,21

*Moray v. City of Yonkers*, 924 F.Supp. 8 (S.D.N.Y. 1996) ........................................................21

*Morisseau v. DLA Piper*, 532 F.Supp.2d 595 (S.D.N.Y. 2008) .............................................19,28

*Morris v. Lindau*, 196 F.3d 102 (2d Cir. 1999) .........................................................................16

*Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977) .......13,16

*Oliphant v. Connecticut Dept. of Transp.*, No. 3:02cv700 (PCD), 2006 WL 3020890
(D.Conn. 2006) ............................................................................................................................15

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ..............................................26

*Oliveras v. Wilkins*, No. 06 CV 3578(DAB), 2010 WL 423107 (S.D.N.Y. Feb. 5, 2010)............25

*Pace v. Bristol Hosp.*, 964 F. Supp. 628 (D.Conn. 1997) .......................................................33,34

*Pacheco v. N.Y. Presbyterian Hosp.*, 593 F.Supp.2d 599 (S.D.N.Y. 2009) ...............................15

*Pembaur v. Cincinnati*, 475 U.S. 469 (1985)............................................................................21

*Perry v. Clinton*, 831 F.Supp.2d, 1 (D.D.C. 2011) ...................................................................18

*Pickering v. Board of Ed. of Township H.S. Dist. 205, Will County*, 391 U.S. 563 (1968) .........12

*Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79 (1st Cir. 2006)......................................17,18

*Rooney v. Witco Corp.*, 722 F. Supp 1040 (S.D.N.Y. 1989) ......................................................30

*Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ................................................................20

*Slattery v. Swiss Reins. Amer. Corp.*, 248 F.3d 87 (2d Cir. 2001)..........................................18,19

*Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1984), *cert. denied subnom.*,
484 U.S. 1027 (1988) ..............................................................................................................20,21

*Tavarez v. Naugatuck Bd. of Educ.*, No. 3:08-cv-725(CSH), 2012 WL 1435284
(D.Conn. Apr. 25, 2012)....................................................................................................20,32,38

*Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011) .....................14,15

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) ........................................................................28

*University of Texas Southwestern Medical Center v. Nassar*, --- U.S. ---,
133 S.Ct. 2517 (2013)............................................................................................................27,28

*Valenti v. Carten Controls Inc.*, No. CIV. 3:94CV1769 AHN, 1997 WL 766854
(D.Conn. Dec. 4, 1997)................................................................................................................37

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996)........................................25

*Vinci v. Quagliani*, 889 F.Supp.2d 348 (D.Conn. 2012) ......................................................13,20

## TABLE OF AUTHORITIES

Page

*Walsh v. Lebanon Bd. of Educ.*, No. 3:11cv1947 WWE, 2013 WL 425092
(D.Conn. Feb. 4, 2013)  ...................................................................................40
*Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004).....................13,14,16
*White Plains Towing Corp. v. Patterson*, 991 F.2d 1049 (2d Cir. 1993)  .....................17
*Williams v. Deloitte Servs., LP*, No. 3:09cv17(JCH),
2009 WL 3571365 (D.Conn. Oct. 26, 2009)  ...................................................36
*Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552 (S.D.N.Y. 2005)  ...................19
*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) ....................................25

## STATE CASES

*Ahern v. City of New Haven*, 190 Conn. 77 (1983) ...........................................38
*Appleton v. Board of Education*, 254 Conn. 205 (2000) ....................................36
*Avoletta v. Torrington*, 133 Conn.App. 215 (2012).........................................39
*Bator v. Yale-New Haven Hospital*, 73 Conn.App. 576 (2002) ...........................36
*City of Hartford v. International Ass'n of Firefighters, Local 760*, 49 Conn.App. 805
(Conn.App. 1998) .........................................................................................40
*Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766 (1999) ..............................13
*D'Angelo v. McGoldrick*, No. CV 93 0063904, 1995 WL 476843
(Conn.Super. Aug. 3, 1995).....................................................................15,16
*Delaney v. Institute of Living, et al.*, No. CV020097157S, 2002 WL 1559043,
32 Conn. L. Rptr. 336 (Conn.Super. Jun. 18, 2002)....................................36,37
*Dollard v. Board of Education*, 63 Conn.App. 550 (2001) ...............................36
*Elinsky v. Marlene*, No. CV960557659, 1997 WL 729102 (Conn.Super. Nov. 14, 1997) .........39
*Esposito v. Connecticut College*, No. X04CV970117504S, 2000 WL 1337665
(Conn. Super. Sep. 1, 2000) .........................................................................32
*Foncello v. Amorossi*, 284 Conn. 225 (2007)................................................32
*Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107 (1982)................................33
*Grady v. Somers*, 294 Conn. 324 (2009) ......................................................39
*Morrissey v. Yale University*, 268 Conn. 426 (2004) .....................................34,35
*Nelson v. Yale University*, No. CV010455318, 39 Conn. L. Rptr. 69, 2005 WL 1089168
(Conn. Super. Apr. 5, 2005).........................................................................34
*O'Connor v. Board of Education*, 90 Conn.App. 59 (2005).............................31,32
*Pane v. City of Danbury*, 267 Conn. 669 (2004) .......................................31,32
*Petyan v. Ellis*, 200 Conn. 243 (1986) ........................................................34
*Scandura v. Friendly Ice Cream Corporation*, No. CV 930529109S, 1996 WL 409337
(Conn.Super. Jun. 26, 1994) .......................................................................37
*Singhaviroj v. Fairfield*, No. CV054007480S, 2011 WL 1176163
(Conn. Super. Mar. 9, 2011) .......................................................................32
*Starratt v. Spencer*, No. CV940140926S, 2002 WL 1459706 (Conn.Super. May 30, 2002)........33
*State v. Commission on Human Rights and Opportunities*, 211 Conn. 464 (1989) ....................25
*Tarka v. Filipovic*, 45 Conn.App. 46 (1997)..................................................33
*Trimachi v. Connecticut Workers Comp. Comm.*, No. CV 970403037S, 2000 WL 872451
(Conn.Super. 2000) .....................................................................................40

## TABLE OF AUTHORITIES

**Page**

*Valencia v. St. Francis Hosp. & Med. Ctr.*, No. CV 940538867S, 1996 WL 218760
(Conn.Super. Apr. 3, 1996) ................................................................37
*West Haven v. Hartford Ins. Co.*, 221 Conn. 149 (1992) ...........................39
*Wu v. Fairfield*, 204 Conn. 435 (1987)....................................................39

## **STATUTES**

Conn. Gen. Stat. § 1-210................................................................33
General Statutes § 7-101A ............................................................38,39
Conn. Gen. Stat. § 7-465................................................................38,39
Conn. Gen. Stat. § 31-51m ............................................................23,24
Conn. Gen. Stat. § 31-51q..............................................................12,13,15
Conn. Gen. Stat. § 31-128f ............................................................32,33
Conn. Gen. Stat. § 46a-82..............................................................25
Conn. Gen. Stat. § 52–577n ...........................................................31,32
29 U.S.C. § 626..........................................................................26
42 U.S.C. § 1983 ...................................................................... passim
42 U.S.C. § 2000e-5....................................................................25

## **OTHER AUTHORITIES**

Prosser & Keeton, Torts, § 12 at 60 (5th ed. 1984) ..................................34
3 Restatement (Second), Torts § 652A .................................................32
Fed. R. Civ. P. 56 .......................................................................11

The Defendant, City of Stamford (the "City"), has moved for summary judgment on all counts in Plaintiff's Amended Complaint (the "Complaint").[1]  As set forth below,[2] there are no genuine issues of material fact in dispute, and the City's Motion for Summary Judgment should be granted.

## I.      PRELIMINARY STATEMENT

Plaintiff, a current City employee, made numerous admissions during his deposition that defeat his claims.  Many of the causes of action in his "kitchen sink" Complaint fail for legal reasons as well.  The work problems experienced by Plaintiff were all a result of his own poor performance and misconduct, and not of retaliation or discrimination.  Accordingly, the Court should enter summary judgment in the City's favor as to all counts in the Complaint.

## II.     FACTUAL BACKGROUND

### A.      The Parties

The City is a municipal corporation organized under Connecticut law, and the Honorable Michael Pavia is the City's Mayor.  (Complaint, ¶ 9.)  On or about November 25, 2005, the City hired Plaintiff to be a Vehicle Mechanic in the City's Vehicle Maintenance Department, which is within the City's Office of Operations.  (Complaint, ¶¶ 8, 18.)  His duties included performing repairs and preventative maintenance on all types of City vehicles and equipment.  (Deposition of Michael Scacco, "Scacco Dep.," attached as Exhibit A, p. 47.)  Plaintiff continues to be employed by the City.  *Id*. at 47.  Over the past five years, Complainant has filed numerous grievances, estimated between 40 to 50, directed at various City employees.  *Id*. at 102.  Indeed,

---

[1] Defendants Michael Scacco and Ernest Orgera are represented by separate counsel and the claims against those individuals are more fully addressed in their motions for summary judgment. The Defendant Attorney Michael Larobina is also represented by the undersigned counsel, and has filed a separate brief.
[2] The City also incorporates by reference the arguments set forth in the summary judgment briefs of the Co-Defendants.

Plaintiff admits having "issues" with "numerous" City employees.  (Deposition of James Fasoli,[3] "Pl. Dep.," attached as Exhibit B, p. 150.)  Plaintiff has also had "conduct and performance" issues dating back to at least 2007.  (Pl. Dep., pp. 683-84; Exhibits 24 and 25 from Pl. Dep., attached as Exhibits C and D.)

Effective December 1, 2009, Mayor Pavia appointed Ernest Orgera as the City's Director of Operations.  (Complaint, ¶¶ 10, 12; Deposition of Ernest Orgera, "Orgera Dep.," attached as Exhibit E, pp. 11, 13.)  Mr. Orgera is 68 years old.  (Orgera Dep., p. 9.)  Mr. Orgera oversees the Operations Department, which includes several divisions: Engineering, Land Use, Parks & Recreation, Fleet Maintenance, Highways, Solid Waste and Traffic.  *Id.* at 14.

In approximately March 2008, the City hired Michael Scacco as a Fleet Maintenance Manager in charge of the City's Vehicle Maintenance Department.  (Complaint, ¶ 13; Scacco Dep., p. 12).  Mr. Scacco is 58 years old.  (Scacco Dep., p. 9).  Mr. Scacco is supervised by Mr. Orgera.  (Complaint, ¶ 13.)  Mr. Scacco was Plaintiff's supervisor at the time of the alleged acts described in the Complaint.  (Complaint, ¶ 13.)

On December 1, 2009, Mayor Pavia appointed Michael Larobina as the City's Corporation Counsel and Director of the Office of Legal Affairs, which encompasses the Law Division and Human Resources Division.  (Complaint, ¶¶ 14-15; Deposition of Michael Larobina, "Larobina Dep.," attached as Exhibit F, p. 28.).  According to Plaintiff, and pursuant to Section C5-20-7 of the Stamford City Charter, the "Director of Legal Affairs or his designee shall be responsible for the supervision of all personnel functions of the City, including all labor negotiations and other matters affecting civil service employment, collective bargaining and employees of the City."  (Complaint, ¶ 16; Exhibit G.)  This Charter provision is the primary, if

---

[3] Plaintiff's deposition was taken over the course of five days: November 21 and December 2, 2011; February 17 and June 6, 2012; and January 15, 2013.  The transcript pages are consecutively numbered from one session to the next.

not sole, basis for Plaintiff's claims against Attorney Larobina.  There is no evidence, or even allegation, that Attorney Larobina personally engaged in any conduct, or made any decision, giving rise to any civil rights violation or intentional tort.  Until the Complaint was filed, Attorney Larobina did not even know who Plaintiff was.  (Larobina Dep., pp. 29, 65.)  Plaintiff has admitted he has no evidence that Attorney Larobina: Was involved with any of the decisions affecting his employment; failed to act; had a duty to intervene on Plaintiff's behalf; or received any complaints from Plaintiff.  (Deposition of Plaintiff, "Pl. Dep.," pp. 471-72, 478; Affidavit of Attorney Larobina, "Larobina Aff.," attached as Exhibit H, ¶ 7.)  Indeed, in his position, Attorney Larobina did not become involved with issues pertaining to individual employees. (Larobina Dep., p. 120.)

### B.      Alleged Sexual Harassment Of A Female Co-Worker

Plaintiff alleges that in April 2008 he became aware of sexually harassing conduct directed toward a female co-worker, Charlene MacArthur.  (Complaint, ¶¶ 21-24.)  Plaintiff alleges that on or about April 3, 2008, he wrote a letter to the City complaining of the alleged harassment, and that later he verbally brought this issue to the attention of the City's former Director of Operations, Benjamin Barnes.  (Complaint, ¶ 25.)  This letter was also signed and submitted by the President of Plaintiff's union (and a co-worker), John Perkins.  (Pl. Dep., pp. 524-25.)  Notably, neither Attorney Larobina nor Mr. Orgera was even employed by the City until almost two years after this issue was raised by Plaintiff.  (Larobina Dep., p. 28; Pl. Dep., p. 778.)  Furthermore, Plaintiff has admitted that he has no evidence that Mr. Scacco knew anything about him raising the issue.  (Pl. Dep., pp. 38-9; 57-58; 778.)

### C.      Plaintiff's Allegations Regarding Misuse And Theft Of City Property

Plaintiff alleges that during his employment he observed a pattern of illegal and/or improper activity, including: City workers selling City-owned surplus scrap metal and keeping

the proceeds for their private use, or for employee parties; unsafe working conditions; waste and mismanagement with respect to the sale, purchase and repairs of certain City-owned trucks including questionable transactions surrounding the purchase of several trucks. (Complaint, ¶ 33.)

With regard to the scrap metal issue, Plaintiff alleges that he reported these activities to Joseph Tarzia, the now former Chairman of the City's Board of Finance, Salvatore Gabriele, a member of the City's Board of Representatives, and the Federal Bureau of Investigation ("FBI"). (Complaint, ¶ 34.)  Plaintiff claims that his report to Messrs. Gabriele and Tarzia occurred in April 2010.  (Pl. Dep., pp. 68, 602-03.)  Plaintiff never reported that Mr. Scacco had any involvement in the scrap metals issues.  *Id*. at 70-71.  Plaintiff has admitted he did not report the issue to Attorney Larobina or Messrs. Scacco or Orgera, and there is no evidence that any of them had knowledge of Plaintiff's supposed reports to others.  *Id*. at 604, 607-08.  In his Complaint, Plaintiff alleged that Mr. Scacco knew he provided information to the FBI, but Plaintiff has since admitted he has no evidence to support that contention.  (*Id*. at 425; Complaint, ¶ 37.)  After an investigation, the Stamford Police Department found no wrongdoing with regard to the scrap metal issues.  (Pl. Dep., p. 605.)

Plaintiff has alleged that, in 2008 or 2009, he made two or three complaints about workplace safety to an employee in the City's risk management department.  (Pl. Dep., pp. 99-100.)  Plaintiff does not recall whether Mr. Scacco was working for the City at the time of his alleged complaints, and he has no evidence that Mr. Scacco was ever aware of the complaints. *Id*. at 103.  Attorney Larobina and Mr. Orgera had not yet begun working for the City.

Plaintiff alleges that on May 19, 2010, he attended a Board of Representatives meeting and spoke out against the City's purchase of several used Mac trucks.  (Complaint, ¶¶ 38-39.) After May 19, 2010, Plaintiff did not again raise the truck issue.  (Pl. Dep., p. 163.)

### D. Plaintiff's Allegations Regarding Nepotism In The Personnel Division

Plaintiff also alleges that he observed nepotism and special treatment given to friends and family of Tania Barnes, who was a human resources generalist in the City's Personnel Division.[4] Plaintiff alleges that in February 2010, he learned about an opening for the position of Traffic Violations Officer with Special Police Powers that Ms. Barnes filled on a "provisional basis" with her brother, George Rodriguez.  (Complaint, ¶ 85.)  Plaintiff has since testified that he does not know who made the hiring decision, but claims only that Ms. Barnes was involved in processing the paperwork.  (Pl. Dep., pp. 661-62.)  According to Plaintiff, this provisional hiring violated his union's collective bargaining agreement because the job announcement was supposed to be have been made public, and the position first should have been offered to someone within his union.  (Complaint, ¶¶ 86-88.)  Plaintiff further claims that the hiring of Mr. Rodriguez violated the City's Ethics Code.  (Complaint, ¶¶ 94-95.)  Plaintiff also claims that by signing a payroll action form ("PAF"), Ms. Barnes violated the City Charter.  (Complaint, ¶¶ 96-97.)  Plaintiff alleges that he reported this matter to Messrs. Tarzia and Gabriele.  (Complaint, ¶ 89.)  However, at his deposition, Plaintiff testified that he only mentioned the concern to Mr. Gabriele in the hallway during a Republican Town Committee meeting, and does not know whether Mr. Tarzia even heard it.  (Pl. Dep., pp. 596-97.)  Plaintiff admits that he has no evidence that Attorney Larobina or Messrs. Scacco or Orgera knew that Plaintiff reported these concerns to Messrs. Gabriele and/or Tarzia.  *Id*. at 601.  Plaintiff also admitted he does not know

---

[4] Plaintiff has voluntarily dismissed his claims against Ms. Barnes.  Inexplicably, Plaintiff has refused to dismiss the claims against Attorney Larobina even though he had no direct involvement in anything Plaintiff complains about.

if there is any causal connection between any discipline he received and the allegations Plaintiff asserted about alleged nepotism. *Id*. at 760-61.

Plaintiff alleges that Mr. Tarzia then launched his own investigation of Mr. Rodriguez's hiring, and on or about April 19, 2010, Mr. Tarzia obtained from the City's Office of Policy and Management a copy of the PAF related to the provisional hiring of Mr. Rodriguez. (Complaint, ¶ 100.) The PAF is allegedly dated January 27, 2010, and reflects Ms. Barnes' signature in the box marked "Personnel Director." (Complaint, ¶ 101.) Plaintiff claims that Mr. Tarzia also requested the PAF directly from the City human resources department. (Complaint, ¶ 102.) Plaintiff alleges that, on April 21, 2010, Mr. Tarzia received a copy of the PAF that was signed by Attorney Larobina and dated January 28, 2010. (Complaint, ¶ 103.) According to Plaintiff, Attorney Larobina "back-dated" his signature on the PAF in an apparent effort to cover up the allegedly illegal hiring of Mr. Rodriguez by the Personnel Division. (Complaint, ¶ 104.) However, the evidence demonstrates that Attorney Larobina separately signed the PAF on January 28, 2010, and does not support a claim that Attorney Larobina "back-dated" the PAF. (Larobina Dep., p. 105-06; Exhibit 8 from Larobina Dep., attached as Exhibit I.) Nevertheless, Plaintiff has no evidence that Attorney Larobina even knew Plaintiff raised the hiring issue with Mr. Tarzia nor does Plaintiff have any evidence that Attorney Larobina's signing of the PAF had anything to do with Plaintiff's job or Plaintiff's report of the hiring to Mr. Tarzia. (Pl. Dep., p. 601.)

### E.    Mr. Scacco's Ethics Complaint

Plaintiff further claims that, in May of 2010, Mr. Scacco filed an ethics complaint against Messrs. Tarzia and Gabriele. (Complaint, ¶ 72.) Plaintiff has alleged that he was retaliated against for his "[a]nticipated testimony in either the Gabriel or Tarzia Board of Ethics hearings."

- 6 -

(Complaint, ¶ 145f.)  However, Plaintiff admitted that he "was never notified that [he] was going to be a witness."  (Pl. Dep., p. 16.)

### F.      The Alleged Retaliatory And Discriminatory Actions

Plaintiff claims that, as a result of his allegedly speaking out about the issues described above, he was retaliated against in various ways.[5]  He also claims that certain actions were taken against him because of his age (sixty-eight).  (Complaint, ¶ 7.)

On June 23, 2008, Plaintiff was issued an Employee Warning Notice regarding a June 19, 2008 incident in which he was insubordinate.  (Attached as Exhibit J.)  Plaintiff testified that this was in retaliation for his only earlier alleged protected activity; complaining about Ms. MacArthur allegedly being harassed.  (Pl. Dep., pp. 57-58.)  The warning was later rescinded by agreement, and Plaintiff testified that the document did not constitute discipline.  (*Id*. at 51; Exhibit K.).  Plaintiff testified that, between June 19, 2008 and February 2009, he suffered no retaliatory acts.  (Pl. Dep., p. 251.)

On February 4, 2009, was counseled for taking an unscheduled break.  After the counseling session, Plaintiff left work claiming to be sick, and made threatening and intimidating comments.  (Exhibit 18 from Pl. Dep., attached as Exhibit L.)  As a result, Plaintiff was suspended for one day (February 25, 2009) without pay.  *Id.*

In December 2009, Plaintiff received a five-day suspension for insubordination, poor work performance and creating a hostile work environment.  (Part of Exhibit 22 from Pl. Dep., attached as Exhibit M.)  Mr. Scacco was not the decision-maker with regard to this suspension.  (Pl. Dep., p. 139.)  Plaintiff challenged the suspension, and it was rescinded.  *Id*. at 642.

---

[5] In the Complaint, Plaintiff claimed that he was placed on a retaliatory "hit list."  (Complaint, ¶ 30.)  At his deposition, Plaintiff clarified that there was no actual list and he was speaking figuratively.  (Pl. Dep., p. 42.)

Plaintiff has also raised claims that he was transferred in relation for his alleged protected activity.  He alleges that, on or about January 5, 2010, he was re-assigned from the McGee Avenue Fleet Maintenance facility to the Scofield Park worksite, which was "generally understood" to be built on a "toxic waste site."  (Complaint, ¶ 44.)  Mr. Orgera transferred Plaintiff at the request of Mr. Tarzia, so that Plaintiff could avoid pending discipline.  (Orgera Dep., pp. 31-38; 213-14.)  Mr. Orgera told Plaintiff that, if he behaved after the transfer, his prior discipline would be removed, and Plaintiff thanked him.  *Id.* at 44-46.  Plaintiff has no evidence that Mr. Scacco was involved in the decision to transfer him.  (Pl. Dep., pp. 355-56; Scacco Dep., p. 145.)  Although he calls it a "toxic waste site," the site did not cause Plaintiff to become ill or file a workers' compensation claim.  (Pl. Dep., pp 442-43.)  The site has been tested for chemicals, and chemicals were not found.  (Orgera Dep., p. 65.)  Indeed, Plaintiff testified that he was relieved to be transferred and enjoyed working at Scofield.  (Pl. Dep., pp. 770-71.)  Plaintiff testified that the only allegedly retaliatory act which Mr. Orgera was responsible for was this transfer.  *Id.* at 725, 763.  On or about October 14, 2010, Plaintiff was transferred from Scofield Park back to the McGee Avenue maintenance facility.  (Complaint, ¶ 78.)  The reason for this transfer was a lack of manpower in the Fleet Maintenance Division.  (Orgera Dep. pp. 51-53.)  Somehow, Plaintiff claims that both removing him from *and* returning him to Scofield Park were retaliatory.  (Pl. Dep., p. 366.)  Plaintiff has not claimed that his pay was reduced or that he was demoted based upon his transfers.  Attorney Larobina was not involved in either of the transfers.  (Larobina Dep., pp. 64-65, 72-73; Larobina Aff., ¶ 7.)

Plaintiff alleges that shortly after his transfer back to the McGee Avenue facility, he was subjected to the following: sexual innuendos were written on a lunchroom white board pertaining to whistleblowers and rats; toy rats were placed in Plaintiff's tool box; Plaintiff was called a rat

by several unnamed co-workers; in a September 2010 union meeting, co-worker and fellow union member Richard Valentine suggested that Plaintiff should be thrown out of the union for being a rat. (Complaint, ¶ 80.)  With regard to the white board, Plaintiff told Mr. Scacco that someone had written something about a whistleblower.  (Scacco Dep., p. 224.)  The written comments Plaintiff reported were not seen by Mr. Scacco, did not mention Plaintiff by name, and Mr. Scacco did not understand why Plaintiff thought he was a whistleblower.  *Id.*   Plaintiff admitted that the writing was removed from the whiteboard, and that Mr. Scacco called human resources to investigate the incident, which interviewed employees.  (Pl. Dep., pp. 368-69.)  Plaintiff has no idea who wrote the alleged comments.  *Id*. at 368.  Regarding the supposed plastic rat incident, Plaintiff reported to Mr. Scacco that he found a plastic rat on his tool box. (Scacco Dep., p. 216.)  Plaintiff stated that he was upset and Mr. Scacco asked why.  Plaintiff responded "you know why," and Mr. Scacco, having no knowledge of any protected activity by Plaintiff, responded that he did not.  *Id*. at 217-18.  Regardless, Plaintiff admits that Mr. Scacco allowed him to leave work after he claimed to be upset by this.  (Pl. Dep., p. 374.)  Plaintiff admits that Mr. Scacco brought the issue to the attention of human resources.  *Id*. at 374-75. Plaintiff does not know who put the plastic toy on his toolbox.  *Id*. at 376, 551.  The plastic toy was not actually a rat, but rather a paperclip-sized mouse.  (Scacco Dep., pp. 217-18.)  A week later, Plaintiff reported a second plastic rat.  *Id*. at 217.  Mr. Scacco removed the plastic mice and put them on his computer.  *Id*. at 219-220.  When Mr. Scacco learned that Plaintiff was claiming something wrongful about Mr. Scacco having the mice on his computer, Mr. Scacco disposed of them.  *Id*.

Plaintiff also claimed in his Complaint that his personnel file was left in common areas of the Stamford municipal building.  (Complaint, ¶ 131.)  However, in his deposition, Plaintiff

clarified that he is complaining about his file allegedly being available from the City's Legal Department, upon request, for review.  (Pl. Dep., p. 608.)  Plaintiff "believes" that the <u>Stamford Advocate</u>, a newspaper, accessed it, but he has no evidence of this.  *Id*. at 609-611.  He claims that Ms. Barnes also accessed the file, but he does not know whether her access was permitted or not.  *Id*. at 610-11.  He further claims that Mr. Gabriele obtained a copy, but testified he does not know whether Mr. Gabriele was permitted access as a City elected official.  *Id*. at 611-2.  Plaintiff further claims that the City's Ethics Board obtained a copy, but does not know whether the Board is entitled to review City employee's personnel files.  *Id*. at 614-16.  Plaintiff testified he does not know whether Attorney Larobina was aware that his file had been accessed.  *Id*. at 613; Larobina Aff., ¶ 8.

Plaintiff alleges that, on April 14, 2011, Mr. Scacco issued him a five (5) day suspension for failing to come into work on March 22, 2011.  (Complaint, ¶ 125.)  The suspension was also to address a host of other issues, including: on March 16, 2011, talking on the phone when he was told to get back to work; on March 17, 2011, leaving work four minutes after punching-in stating he was taking a vacation day, which is required to be requested in advance; on March 21, 2011, refusing to perform an assignment and instead socializing with a co-worker; and taking excessive time to perform tasks.  (Exhibit N.)  This suspension occurred at least a year after all of Plaintiff's alleged protected speech.

Plaintiff also complains about a June 27, 2011 pre-disciplinary hearing regarding Plaintiff's installation of a brake pad.  (Complaint, ¶ 134.)  However, Plaintiff admits that two other mechanics reviewed Plaintiff's work and concluded he had installed the brakes incorrectly.  (Pl. Dep., pp. 574-76.)  Plaintiff admitted he does not even know Mr. Scacco's motivation for pursuing the issue.  *Id*. at 393.  Plaintiff also admitted that he was not disciplined for this incident

but rather was told that he would receive additional training, which did not even occur.  (Pl. Dep., p. 579.)

### G.    The Complaint

Plaintiff's Complaint asserts the following causes of action:

| Count | Cause of Action |
|-------|-----------------|
| One | 42 U.S.C. § 1983, First Amendment Retaliation |
| Two | Conn. Gen. Stat. § 31-51q Free Speech Retaliation |
| Three | Conn. Gen. Stat. § 31-51m Whistleblower Retaliation |
| Four | Title VII of the Civil Rights Act of 1964 ("Title VII") Retaliation |
| Five | Conn. Gen. Stat. § 46a-60(a)(4) ("CFEPA") Retaliation |
| Six | Age Discrimination in Employment Act ("ADEA"), Retaliation |
| Seven | ADEA Discrimination |
| Eight | CFEPA Age Discrimination |
| Nine | Invasion of Privacy |
| Ten | Intentional Infliction of Emotional Distress ("IIED") |
| Eleven | Conn. Gen. Stat. §§ 7-101a and 7-465 Indemnification |

Counts One and Ten are directed to all defendants.  Counts Two through Eight, as well as Count Eleven, are directed only to the City.  Count Nine is directed to the City and Mr. Scacco.  As set forth below, the City is entitled to summary judgment on each of Plaintiff's claims.

## III.   LAW AND ARGUMENT

### A.    Legal Standard For A Motion For Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  To overcome a motion for summary judgment, a plaintiff must offer specific support for his claims, not simply conclusory allegations.  *See Bickerstaff v. Vassar College*, 196 F.3d 435, 451 (2d Cir. 1999); *Martin v. Town of Westport*, 329 F.Supp.2d 318, 325 (D.Conn. 2004)  To avoid summary judgment, Plaintiffs "may not rest upon mere allegations or denials… [instead they] must set forth specific facts showing that there is a

genuine issue for trial… [and provide] sufficient evidence supporting the claimed factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

> **B.      Plaintiff's Free Speech Claims Fail.**

In Count One, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges a claim of First Amendment retaliation against all Defendants.  In Count Two, Plaintiff asserts a claim under Conn. Gen. Stat. § 31-51q[6] based upon the same allegations.

The First Amendment of the United States Constitution states that "Congress shall make no law … abridging the freedom of speech… ."  Among other things, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  This right is not absolute.  As the United States Supreme Court has repeatedly observed, a balance must be struck "between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services through its employees."  *Pickering v. Board of Ed. of Township H.S. Dist. 205, Will County*, 391 U.S. 563, 568-69 (1968).  Section 31-51q provides:

> Any employer…who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the

---

[6] Although this claim is brought under a state statute, "the vindication of [Plaintiff's] state-law rights as asserted in his well-pleaded section 31-51q cause of action requires that a court 'construe' federal First Amendment law and 'evaluate its scope.'"  *Bracey v. Board of Education of Bridgeport*, 368 F.3d 108, 116 (2d Cir. 2004), quoting *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 91, 101 (2d Cir.), cert. denied 534 U.S. 1066 (2001).  The *Bracey* court held that 31-51q, therefore, provides an independent basis for federal question jurisdiction.  As such, the Court should exercise jurisdiction over this claim in the event that it dismisses Plaintiff's federal law claims.

> working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorneys fees as part of the costs of any such action for damages….

Section 31-51q prohibits the retaliatory discharge of an employee who invokes constitutionally guaranteed free speech rights that, in turn, protect statements that address a matter of public concern. *See Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766, 776 (1999).

As set forth below, Plaintiff's free speech claims fail for a variety of factual and legal reasons.

### 1.    **The Evidence Does Not Support Plaintiff's Claims.**

> In order to survive a motion for summary judgment on a First Amendment retaliation claim, a plaintiff who is a government employee must present evidence which demonstrates: (1) that the speech at issue was protected; (2) that the plaintiff suffered an adverse employment action; and (3) that there was a causal connection between the allegedly protected speech and the adverse employment action.

*Vinci v. Quagliani*, 889 F.Supp.2d 348, 354 (D.Conn. 2012). Plaintiff must "aver some 'tangible proof'" that h[is] protected speech actually was a "substantial motivating factor" in the alleged adverse employment action. *Washington v. County of Rockland*, 373 F.3d 310, 320-321 (2d Cir. 2004); *Deters v. Lafuente*, 368 F.3d 185, 190 (2d Cir. 2004). Even if a plaintiff succeeds in showing these factors, his employer may nonetheless escape liability and prevail on a motion for summary judgment if the employer is able to establish that the same adverse employment action would have occurred "even in the absence of the protected speech." *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

Plaintiff cannot survive summary judgment because not all of his speech was protected; several of the actions he complains of were not materially adverse employment actions; and, in any event, there is no evidence supporting a causal connection between those actions and any of his speech.

a.      **Plaintiff's "Anticipated" Speech Was Not Protected.**

Plaintiff has alleged that his "anticipated" participation in an ethics proceeding constituted protected speech.  However, Plaintiff admitted that he did not actually participate, and therefore, he exercised no free speech rights.  Accordingly, his claims based on this "anticipated" speech should be dismissed.  *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) ("Andonissamy admitted that he did not include his complaints about … discrimination in his correspondence with … human resources but planned to mention those complaints if anyone from the human resources department contacted him during an investigation. At best, this raises an inference that Andonissamy planned to engage in statutorily protected activity, but it does not amount to statutorily protected activity in its own right.").

b.      **Plaintiff Did Not Suffer Materially Adverse Employment Actions.**

The Second Circuit has defined an adverse action in a First Amendment retaliation case as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Washington*, 373 F.3d at 320 (internal quotation marks omitted).

Plaintiff cites a combination of alleged events that he claims were in retaliation for his alleged protected speech.  Despite these events, according to him, Plaintiff continued to speak out on matters of public concern.  The fact that he continued to do so demonstrates that the events would not "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Id.*; s*ee Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011) ("Indeed, while the test is an objective one, it is relevant that Tepperwien himself was not deterred from complaining—he complained numerous times.").  Even assuming that Plaintiff's non-rescinded suspensions could be considered materially adverse actions, none

of the other allegedly retaliatory actions cited by Plaintiff -- such as the transfers, counseling, written discipline, the plastic mice, the bulletin board incident -- constitute materially adverse actions.  *See Chang v. Safe Horizons*, 254 Fed.Appx. 838, 839 (2d Cir. 2007) ("we note that oral and written warnings do not amount to materially adverse conduct."); *Oliphant v. Connecticut Dept. of Transp.*, No. 3:02cv700 (PCD), 2006 WL 3020890, at *7 (D.Conn. 2006) ("[c]ounseling letters, like negative evaluations or other forms of workplace reprimands, are not disruptive enough to rise to the level of "adverse employment actions."); *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) ("petty slights or minor annoyances that often take place and that all employees experience."); *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F.Supp.2d 599, 627 (S.D.N.Y. 2009) (holding that plaintiff's transfer did not constitute an adverse employment action and would not "deter a reasonable employee from complaining about an employer's employment practices" because plaintiff's new job was not "less desirable or disadvantageous than his prior job" and plaintiff had not suffered "adverse consequences").  Nor do these events in their combination rise to the level of a materially adverse action.  *See Tepperwien*, 663 F.3d at 572 ("Zero plus zero is zero.").

With respect to Plaintiff's 31-51q claim, only "discipline or discharge" is actionable.  In *Avedisian v. Quinnipiac University*, 387 Fed.Appx. 59 (2d Cir. 2010), the court held that even a denial of tenure was not "discipline" and therefore not actionable under the statute.  The *Avedisian* court held that, because a denial of tenure does not alter the status quo of the employment relationship, it is not actionable.  Thus, the actions for which Section 31-51q provides redress are even fewer than Section 1983.  *See D'Angelo v. McGoldrick*, No. CV 93 0063904, 1995 WL 476843, at *5 (Conn.Super. Aug. 3, 1995) (police officers were not

"disciplined" under § 31-51q when they were transferred to a new assignment).  Under this formulation, the alleged acts complained about by Plaintiff are not actionable.

c.      **There Is No Evidence Of Any Causal Connection.**

In order to prove the third element of a First Amendment retaliation claim, a government employee plaintiff must establish "a causal connection between defendants' allegedly retaliatory conduct and [the plaintiff's] protected speech." *Washington*, 373 F.3d at 320-21.  While a government employee pleading a First Amendment retaliation action "can establish the causal connection between protected expression and an adverse employment determination indirectly by showing that the protected activity was followed [either] by adverse treatment in employment, or directly by evidence of retaliatory animus," courts in this Circuit nonetheless have held that a plaintiff may not solely "rely on conclusory assertions of retaliatory motive to satisfy the causal link." *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004) (citing *Morris v. Lindau*, 196 F.3d 102, 110–11 (2d Cir. 1999) (abrogated on other grounds) (internal quotations omitted)). A plaintiff must therefore provide the Court with "some tangible proof to demonstrate that [his] version of what occurred was not imaginary." *Id*. (emphasis added).  "[W]ide-ranging speculation about what may have motivated" a defendant employer to act is, "[w]ithout some proof in the record [of] retaliatory animus toward" the plaintiff and without any "evidence to contradict [a defendant's] testimony" to the contrary, simply insufficient to make a First Amendment retaliation claim.  *Deters*, 368 F.3d at 190.

Even if Plaintiff can make out a prima facie case of retaliation -- which he cannot -- the City cannot be held liable because it would have undertaken the same course of action even in the absence of the protected activity.  *See Mount Healthy*, 429 U.S. at 283-87; *Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998) (affirming summary judgment where plaintiff would have been

disciplined even in the absence of his protected speech).  The City need not show that the

protected activity had no bearing at all on the adverse decision, but only that the decision would

have been made regardless of Plaintiff's alleged protected speech, for legitimate reasons.  *See*

*White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060-61 (2d Cir. 1993) (reversing

judgment in plaintiffs' favor where plaintiffs would have been dismissed from their employment

even without consideration of the protected speech).

      Plaintiff has testified that he has no evidence that any of his alleged speech caused him to

experience adverse employment actions.  In this regard, Plaintiff testified: "I make a complaint

and then I get criticized, I don't know if that criticism or my complaint, what it was related to

because I did make numerous complaints about numerous things.  So I can't say 'I said this and

he criticized me for it.' "  (Pl. Dep., p. 572.)  Plaintiff also has a very warped sense of what is the

appropriate role of the employer in the workplace.  For example, he does not believe that his

employer has the right to counsel him on work-related matters.  (Pl. Dep., pp. 44-46; 231.)  All

this demonstrates that Plaintiff's claims are misguided.

      Aside from these issues, the evidence proves there was no causal connection between

Plaintiff's alleged protected activity and the alleged retaliatory actions against him.  First and

foremost, Plaintiff has admitted he has no evidence that Attorney Larobina or Messrs. Scacco or

Orgera even knew about his alleged protected activities.  (Pl. Dep., pp. 596-601; 607-08.)  As

such, there can be no causal connection between these complaints and the allegedly retaliatory

acts.  *See Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 85 (1st Cir. 2006) (affirming

summary judgment on retaliation claim stating "[t]here is no evidence that Vargas, the CTI

employee who discharged Pomales, had any knowledge that Pomales complained to Rodney

Rodríguez about Peter Rodríguez's conduct." and citing cases holding evidence that decision-maker knew of protected activity required to prove retaliation claim).

Furthermore, Plaintiff has not claimed that the people who retaliated against him were implicated by his complaints.  For example, he has not alleged that Attorney Larobina or Messrs. Orgera[7] or Scacco stole scrap metal, harassed Ms. MacArthur, or engaged in nepotism.  Along these same lines, Plaintiff admitted he does not know why an employee in the City's Fleet Maintenance department would be concerned with Plaintiff's alleged report about the scrap metal issue.  (Pl. Dep., p. 378.)  In addition, Attorney Larobina and Mr. Orgera were not even employed by the City at the time that Plaintiff made his report regarding Ms. MacArthur.  These individuals simply would have no reason to retaliate for complaining about things they had nothing to do with, and summary judgment should enter on this basis.  *See, e.g., Beiter v. Runyon*, 50 Fed.Appx. 32, 36 (2d Cir. 2002) (summary judgment on retaliation claim where employee claimed supervisors retaliated against her based on a her complaint about a different employee); *Perry v. Clinton*, 831 F.Supp.2d, 1, 24 (D.D.C. 2011) (holding no causal link established between protected activity and retaliation when plaintiff "provided no evidence or argument explaining why [supervisor] would decide to retaliate against her because she filed a complaint against someone else.").

Even before Plaintiff engaged in any of the alleged protected activity cited in his Complaint, he had a documented history of work-related problems dating back to 2007.  That pattern has, unsurprisingly, continued.  Nonetheless, the allegedly retaliatory actions all occurred after documented discipline.  Based on these facts, there can be no inference that  any of the alleged protected activity caused the actions.  *See Slattery v. Swiss Reins. Amer. Corp.*, 248 F.3d

---

[7] The only allegation of retaliation against Mr. Orgera is with respect to Plaintiff's transfer to Scofield, and this was clearly for legitimate reason; i.e., Mr. Tarzia's request. It is clear that he did not retaliate against Plaintiff.

87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 615 (S.D.N.Y. 2008) (complaints regarding plaintiff prior to plaintiff's complaint of discrimination precluded causal connection despite temporal proximity).

Furthermore, many of the allegedly retaliatory actions occurred long after the alleged protected activity.  Plaintiff claims that he was retaliated for his alleged protected activity months and years after engaging in it.  Such lengthy time gaps demonstrate that the alleged protected activity had nothing to do with his treatment.  *See, e.g., Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases dismissing retaliation claims where adverse employment action followed protected activity by three to four months); *Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation . . . . Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation.").  Thus, Plaintiff cannot claim that: the Ms. MacArthur complaint caused any acts occurring in the summer of 2008 or after; the scrap metal report caused any acts occurring in or after summer 2010; or that the alleged nepotism complaint caused any acts occurring in or after late Spring 2010.

With regard to the claim of retaliation for Plaintiff's report involving Ms. MacArthur, Mr. Perkins also signed that complaint.  However, Plaintiff concedes he has no evidence that either Mr. Perkins or Ms. MacArthur herself was ever retaliated against.  (Pl. Dep., pp. 39-40; 530-31.) These facts demonstrate that it was not this complaint that caused Plaintiff's treatment.  *See Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1287 (10th Cir. 2003) (no

inference of causation on claim of retaliation for protected speech where other employee also spoke out publicly against department policies, but was not terminated).  Plaintiff has even specifically admitted that Attorney Larobina did not retaliate against him for the Ms. MacArthur complaint.  (Pl. Dep., pp. 535-36.)

Based on the above, no reasonable jury could find a causal connection, and the Court should enter summary judgment.  *See Vinci*, 889 F.Supp.2d at 358-64 (granting summary judgment in 1983 free speech case for lack of evidence of a causal connection); *Tavarez v. Naugatuck Bd. of Educ.*, No. 3:08-cv-725(CSH), 2012 WL 1435284, at *3 (D.Conn. Apr. 25, 2012) (same).

2.      **Plaintiff's Section 1983 Conspiracy Claim Fails As Well.**

Plaintiff has also alleged a "conspiracy" to violate his constitutional rights. (Complaint, ¶¶ 141-42, 145.)  For the reasons set forth above, that claim also fails.  *See Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails.").  There is simply no evidence to support a conspiracy claim.  *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (reiterating that "conclusory allegations" or "unsubstantiated speculation" will not defeat summary judgment on § 1983 conspiracy claim).

3.      ***Monell* Precludes Plaintiff's First Amendment Claim Against The City.**

In a Section 1983 civil rights action, liability does not attach to a municipality for the actions of its employees on a *respondeat superior* basis.  *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-691 (1978).  Rather, a constitutional violation can only be imputed when a policy or custom is fairly attributable to the municipality as its own, and that it is the moving force behind a particular constitutional violation.  *Spell v. McDaniel*, 824 F.2d 1380,

1387 (4th Cir. 1984), *cert. denied subnom.*, 484 U.S. 1027 (1988).  Thus, Plaintiff must present

evidence sufficient to prove: (1) the existence of an official "policy or custom" of such

longstanding to have the force of law; and (2) pursuant to which one or more municipal

employees violated the Plaintiffs' civil rights.  *Monell*, 436 U.S. at 690-691.  "Official policy

traditionally takes the form of an ordinance, regulation, or decision officially adopted and

promulgated by [the municipality's] officers, while a qualifying custom consists of a

longstanding practice that constitutes the standard operating procedure of the local governmental

entity." *Chin v. New York City Housing Authority*, 575 F.Supp.2d 554, 561 (S.D.N.Y. 2008).

  A plaintiff may satisfy the "policy, custom or practice" requirement in one of four ways.

*See Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y. 1996). The plaintiff may allege the

existence of (1) a formal policy officially endorsed by the municipality, *see Monell*, 436 U.S. at

690; (2) actions taken by government officials responsible for establishing the municipal policies

that caused the particular deprivation in question, *see Pembaur v. Cincinnati*, 475 U.S. 469, 483-

84 (1985); (3) a practice so consistent and widespread that it constitutes a custom or usage

sufficient to impute constructive knowledge of the practice to policymaking officials, *see Monell*,

436 U.S. at 690-91; or (4) a failure by policymakers to train or supervise subordinates to such an

extent that it amounts to deliberate indifference to the rights of those who come into contact with

the municipal employees.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  The Second

Circuit has made clear that "[w]here a plaintiff relies not on a formally declared or ratified

policy, but rather on the theory that the conduct of a given official represents official policy, it is

incumbent on the plaintiff to establish that element as a matter of law."  *Jeffes v. Barnes*, 208 F.3d

49, 57-58 (2d Cir. 2000), *cert. denied sub nom.*, 531 U.S. 813 (2000).  There must also be a causal

link between the policy, custom or practice and the alleged injury in order to find liability against

the City. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). In the context of Section 1983 liability, a "policy" is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff has not identified any formal City policy that caused a constitutional violation. Moreover, he has not claimed that he was harmed by the action of a policy making level official, and the City cannot be liable under Section 1983 for unconstitutional conduct by employees below a policymaking level. *See City of St. Louis v. Praprotnick*, 485 U.S. 112, 123 (1988) (only officials with final policymaking authority can subject the government to Section 1983 liability by their actions). "The appropriate inquiry looks to whether the government official has final decision making authority with respect to the particular decision that allegedly deprived the plaintiff of his constitutional rights, not whether the government official has final decision making authority for every type of official action he may engage in." *McMillan v. Monroe City*, 520 U.S. 781, 785 (1997).

There is no evidence that any of the individual defendants had policy-making authority with respect to any specific decision that allegedly violated his constitutional rights. Plaintiff's vague allegations that Messrs. Orgera and Scacco had authority to issue discipline, and that Attorney Larobina had a general obligation to supervise the Personnel Division, do not demonstrate that any of the individuals were "official policymakers" with respect to a specific decision that allegedly violated Plaintiff's constitutional rights. *See, e.g., Albert v. City of Hartford*, 529 F.Supp.2d 311, 330 (D.Conn. 2007) (police chief was not policymaker with respect to personnel decisions); *Looby v. City of Hartford*, 152 F.Supp.2d 181 (D.Conn. 2001) (even though the fire chief had the authority, through the City Charter, to appoint and remove

employees and to institute rules and regulations concerning employee conduct and department

operations, he was not a final decision maker).

Plaintiff has also failed to present any evidence of a practice so consistent and widespread

that it constituted a custom or practice sufficient to impute constructive knowledge to the City.

*See Mettler*, 165 F.3d at 1204.  Plaintiff must present evidence of: (1) a continuing, widespread,

persistent pattern of unconstitutional misconduct; (2) deliberate indifference to or tacit

authorization of such conduct by the governmental entity's policymaking officials, after notice to

the officials of that misconduct; and (3) the Plaintiff's injury by acts pursuant to the

governmental entity's custom, i.e., proof that the custom was the moving force behind the

constitutional violation.  *Id.*  There is no evidence of any widespread, persistent pattern of

unconstitutional misconduct, nor of any tacit authorization of such conduct.  Furthermore,

Plaintiff cannot satisfy the lofty requirements of proving "deliberate indifference" by the City.

*Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).  If a Section

1983 plaintiff could establish liability for failure to train or supervise by merely showing that the

municipality could have done something to prevent the incident in issue, federal courts would be

engaged "in an endless exercise of second-guessing municipal employee training programs."

*Canton*, 489 U.S. at 392.  Because it is not the court's function to "micro-manage municipal

[employers]," liability for a municipality's failure to train or supervise will not be imposed

absent "evidence of a constitutional infirmity." *Fincher v. County of Westchester*, 979 F. Supp.

989, 1099 (S.D.N.Y. 1997).  For all of these reasons, the City cannot be held liable under

*Monell*.

### C.    Plaintiff's 31-51m Claim In Count Three Fails.

Plaintiff also makes a claim under Conn. Gen. Stat. § 31-51m that he was punished for

certain unspecified activities.  Connecticut General Statutes § 31-51m(b) states:

> No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action.

The statute authorizes an employee to bring a civil action "after exhausting all available administrative remedies ... within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later ...."  Conn. Gen. Stat. § 31-51m(c).

The instant Complaint was filed on May 10, 2011, ninety days before which was February 9, 2011.  Plaintiff has not alleged any attempt to exhaust administrative remedies with regard to any of his alleged protected activity, with the sole exception that he raised the alleged Ms. MacArthur sexual harassment issue in his August 25, 2009 administrative complaint filed with the Commission on Human Rights and Opportunities ("CHRO").  Because Plaintiff has failed to either exhaust applicable administrative remedies, or timely file his Section 31-51m claim with or without doing so, the remaining allegations of retaliation should be dismissed.

In addition, this claim fails on its merits.  As set forth above, there is no evidence of any causal connection between Plaintiff's alleged protected activity and the alleged retaliatory actions.  Nor were the actions he experienced materially adverse.  Therefore, Plaintiff's retaliation claims all fail as a matter of law, and the City is entitled to summary judgment on this claim as well.[8]

---

[8] Notably, there is no evidence that Plaintiff was ever "requested by a public body to participate in an investigation, hearing or inquiry." With regard to Mr. Gabriele's ethics hearing. Plaintiff admitted that he "was never notified that [he] was going to be a witness."  (Pl. Dep., p. 16.)  Therefore, this alleged protected activity is not within the scope of Section 31-51m.

**D.      Counts Four, Five, Seven And Eight Are Time-Barred.**

In Counts Four and Five, Plaintiff alleges that he experienced retaliation in violation of Title VII and CFEPA.  In Counts Seven and Eight, Plaintiff Claims that he was discriminated against because of his age, in violation of the ADEA and CFEPA.  Several aspects of those claims are time-barred.

To sustain a claim under Title VII, Plaintiff must exhaust his administrative remedies by timely filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") or the CHRO.  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).  "[T]he exhaustion of administrative remedies is a precondition to bringing a Title VII claim in federal court for any Plaintiff… ."  *Oliveras v. Wilkins*, No. 06 CV 3578(DAB), 2010 WL 423107, at *1 (S.D.N.Y. Feb. 5, 2010).  With respect to his Title VII claim, Plaintiff must have filed a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant had already filed the charge with the CHRO, within 300 days of the alleged discriminatory action.  *See* 42 U.S.C. § 2000e-5(e); *Gomes v. Avco Corp.*, 964 F.2d 1330, 1332-33 (2d Cir. 1992). This statutory requirement is analogous to a statute of limitations.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").  Similarly, Conn. Gen. Stat. § 46a-82(e) states that charges of discrimination and retaliation *must* be brought within 180 days after the complained of conduct.  *See State v. Commission on Human Rights and Opportunities*, 211 Conn. 464, 471 (1989).

The time for filing a charge of employment discrimination begins when a "discrete act" occurs.  *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007).  The U.S. Supreme Court has held that discrete acts of discrimination are deemed to have occurred on the

date they happened and cannot form part of a continuing violation.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).  Discrete acts generally are easy to identify and include such things as termination, transfers, and discipline.  *Id.* at 114; *Grant v. Pathmark Stores, Inc.*, No. 06 Civ. 5755(JGK), 2009 WL 2263795, at *10 (S.D.N.Y. July 29, 2009) (holding that discipline imposed is a discrete act for the purpose of a Title VII discrimination claim).  Therefore, to sustain his retaliation claim under Title VII, Plaintiff must have filed a charge with the EEOC or CHRO within 300 days (or 180 days for his CFEPA claim) after the complained of act, or loses the ability to recover for it.  *Id.* at 108; *Chapman v. City of New York*, No. 06–CV–3153 (ENV)(JMA), 2011 WL 1240001 at *5 (E.D.N.Y. March 30, 2011) ("under Title VII, a plaintiff may only assert claims involving acts alleged to have occurred within 300 days of filing a discrimination complaint with an appropriate anti-discrimination agency."); *Evarts v. Southern New England Telephone Co.*, No. 3:00CV1124 WIG, 2006 WL 2864716, at *6 - *7 (D.Conn. Oct. 2, 2006) (dismissing CFEPA claim where CHRO complaint was not filed within 180 days of incident).  In addition, to be timely Plaintiff's Title VII and ADEA claims must be filed in federal court within 90 days of receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1) (Title VII action must be brought within ninety days of notification of right to sue); 29 U.S.C. Sec. 626(e) (same for ADEA).

Plaintiff's administrative CHRO complaint reflects that it was filed on August 25, 2009. (CHRO Complaint attached as Exhibit O.)  Thus, any allegedly retaliatory or discriminatory actions that occurred prior to October 29, 2008, cannot be raised under Title VII or the ADEA, as such actions occurred more than 300 days before the filing of the CHRO complaint and thus are time-barred.  Similarly, any alleged conduct that occurred prior to February 26, 2009, cannot be

raised under CFEPA because such actions occurred more than 180 days before for the filing of the CHRO complaint, and thus are time-barred.

Several of the alleged incidents of which Plaintiff complains occurred before these dates, including his February 2009 suspension and his 2008 and 2009 written warnings.  Accordingly, the City is entitled to judgment in its favor on such claims asserted in Counts Five and Eight. Any claims in Counts Four and Seven related to pre-October 29, 2008 are likewise not actionable and the City is entitled to judgment in its favor on these claims.  In addition, Plaintiff does not allege that that he received a right to sue letter from the EEOC.  Absent a right to sue letter from the EEOC, Plaintiff has failed to exhaust his administrative remedies, and thus is precluded from bringing claims under Title VII.  *See McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (right to sue letter is a "prerequisite to suit").

### E.      The Evidence Refutes Plaintiff's Claims In Counts Four And Five.

In Counts Four and Five, Plaintiff claims that he was retaliated against for reporting alleged harassment of Ms. MacArthur.  A plaintiff alleging unlawful retaliation for protected opposition to suspected discrimination must prove retaliation was the "but for" cause of the adverse employment action.  *University of Texas Southwestern Medical Center v. Nassar*, --- U.S. ---, 133 S.Ct. 2517 (2013).  As set forth in Section III.B.1.c above, the evidence does not meet this lofty standard, and the City is entitled to summary judgment as to Counts Four and Five.

### F.      Count Six Fails For A Variety Of Reasons.

In Count Six, Plaintiff claims that he was retaliated against for making an internal complaint of age discrimination and for filing his CHRO complaint.  These claims fail because

Plaintiff did not exhaust his administrative remedies and, regardless, no evidence supports his claims.

As set forth above, Plaintiff must first exhaust his administrative remedies prior to bringing claims under the ADEA.  Although Plaintiff filed a CHRO complaint in August 2009 alleging age discrimination and retaliation for complaining about Ms. MacArthur's treatment, that complaint contained no allegation whatsoever that Plaintiff either complained internally about age discrimination or that he was retaliated against for doing so.  (*See* Exhibit O.)  As such, the Court lacks jurisdiction over this claim.  *See Hodges v. Holder*, --- Fed.Appx. ----, 2013 WL 3836215, at *1 (2d Cir. Jul. 26, 2013) ("The record reveals that Hodges failed to raise his retaliation claim in his EEOC charge. Accordingly, the magistrate judge correctly dismissed this claim for failure to exhaust administrative remedies.").

Prior to Plaintiff's CHRO complaint, Plaintiff already had a documented history of work-related problems dating back to 2007, including a one-day suspension in February 2009.  With such a history, there is no inference that the CHRO complaint caused the subsequent problems.  *See Morisseau*, 532 F.Supp.2d at 595 (complaints regarding plaintiff prior to plaintiff's complaint of discrimination precluded causal connection despite temporal proximity).  The next allegedly retaliatory event after the CHRO complaint was Plaintiff's December 2009 suspension, which was later rescinded by agreement.  Even if this could be considered a materially adverse employment action (which it cannot), it did not occur until almost four months after the filing of Plaintiff's CHRO complaint.  This lengthy time gap demonstrates that there was no causal connect between the CHRO complaint and the rescinded suspension, or any subsequent events.

*See, e.g., Clark County*, 532 U.S. at 273-74 (citing with approval cases dismissing retaliation claims where adverse employment action followed protected activity by three to four months).[9]

### G.     Counts Seven And Eight Fail Because There Is No Evidence Of Age Discrimination.

In Counts Seven and Eight, Plaintiff alleges claims of age discrimination in violation of the ADEA and CFEPA.  These claims fail for several reasons.

A plaintiff can establish a prima facie case of discrimination by showing that he or she "(1) is a member of a protected class; (2) was performing his or her duty satisfactorily; (3) was discharged [or otherwise subject to adverse employment action]; and [ ](4) [the adverse employment action] occurred under circumstances giving rise to an inference of discrimination on the basis of his or her membership in the protected class."  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  Once a prima facie case of discrimination has been established, the Court employs the burden-shifting paradigm set forth in *McDonnell–Douglas Corp. v. Green*. 411 U.S. 792, 802–05 (1973).  In *Gross v. FBL Financial Services*, 557 U.S. --, 129 S.Ct. 2343, 2350 (2009), the Supreme Court held that an employee bringing an ADEA disparate-treatment claim must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.  *Gross* holds that the burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when an employee has produced some evidence that age was one motivating factor in that decision.

"To constitute adverse employment action for discrimination purposes, there must be some 'materially adverse change in the terms and conditions of employment'—a higher bar than

---

[9] To prevail on his ADEA retaliation claims, he must show that ADEA retaliation was the "but-for" cause of any alleged adverse employment actions. *See Nassar*, 133 S.Ct. 2517; *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (same standards apply to retaliation claims under Title VII and ADEA). Plaintiff has testified that there were a variety of reasons other than ADEA retaliation for his treatment. (Pl. Dep., pp. 506-07.)  As such, the Court should enter summary judgment on this claim.

for retaliation claims." *Lartey v. Shoprite Supermarkets, Inc.*, No. 08 Civ. 8272(PAC)(LMS), 2011 WL 2416880, at *3 (S.D.N.Y. Jun. 14, 2011).  As set forth above, Plaintiff has failed to cite a materially adverse employment action sufficient to set forth a prima facie case of retaliation. He cannot meet the higher bar for showing an adverse employment action in the discrimination context.  *See Dobrynio v. Cent. Hudson Gas & Elec. Corp.*, 419 F.Supp.2d 557, 564 (S.D.N.Y. 2006) (claim that one-day suspension violated the ADEA dismissed because suspension did not constitute an adverse employment action); *Rooney v. Witco Corp.*, 722 F. Supp 1040, 1046-47 (S.D.N.Y. 1989) (five-day suspension of plaintiff's benefits, later rescinded, is not adverse employment action).

Regardless, there is absolutely no evidence to support an age discrimination claim. Plaintiff clarified that the only individuals he claims discriminated against him based on age are Attorney Larobina and Mr. Scacco.  (Pl. Dep., pp. 492, 498.)  The sole basis for his claim against Attorney Larobina is that Attorney Larobina allegedly made the following comment to a newspaper regarding Plaintiff's CHRO age discrimination claim: "well when we hired him he was sixty-two." *Id.* at 492-97.  Even if such a comment was made, it was clearly to explain that the City's hiring of an older worker demonstrates it did not discriminate against him based on age.  Moreover, Plaintiff has admitted that Attorney Larobina had no involvement in any of the employment decisions affecting him.

With regard to Mr. Scacco, Plaintiff's supposed evidence of age discrimination is that Mr. Scacco asked Plaintiff to retire during a threatened layoff, asked Plaintiff on multiple occasions when he was going to retire, and assigned him heavy-duty work. *Id.* at 498-515. However, the supposed heavy-duty tasks were required by the City, and other employees performed them also. *Id.* at 511-12, 515.  Furthermore, the tasks were not assigned by Mr.

Scacco (or Attorney Larobina or Mr. Orgera for that matter).  *Id.* at 470-71, 478, 513.  The

supposed retirement-related comments by Mr. Scacco are insufficient, as a matter of law, to

survive summary judgment on plaintiff's age claims.  *See Fried v. LVI Services, Inc.*, No. 10 Civ.

9308(JSR), 2011 WL 4633985, at *9 (S.D.N.Y. Oct. 4, 2011) (stating "courts have consistently

held that remarks relating to retirement … are insufficient to defeat a motion for summary

judgment in an ADEA case," and collecting cases).

Moreover, as set forth above, all of the decisions involving Plaintiff were made for

legitimate, non-discriminatory reasons, and summary judgment is appropriate for that reason as

well.  Furthermore, Attorney Larobina and Mr. Scacco are well over 40 years old.  Indeed, Mr.

Scacco is 58 years old.[10]  These facts compel an inference that they did not discriminate against

Plaintiff because of his age.  *See Giordono v. Gerber Scientific Prod., Inc.*, No. 3:99CV00712

(EBB), 2000 WL 1838337, at *7 (D. Conn. 2000) ("Where the decision-makers are also in the

protected age group an inference may be drawn that there is no age-based animus.").  The is no

evidence that age discrimination played any role in any of the decisions affecting Plaintiff, and

certainly were not the "but-for" cause of his treatment.

## H.   Plaintiff's Intentional Tort Claims In Counts Nine And Ten Against The City Are Precluded By State Law And Must Be Dismissed.

It is well-settled that "pursuant to C.G.S. § 52–577n(a)(2), a municipality cannot be held

liable for the intentional torts of its employees, agents and servants."[11] *Pane v. City of Danbury*,

267 Conn. 669, 685–86 (2004); *O'Connor v. Board of Education*, 90 Conn.App. 59, 64 (2005);

*Miner v. Cheshire*, 126 F.Supp. 184, 186 (D.Conn. 2000).

---

[10] Although Plaintiff is not claiming that Mr. Orgera discriminated against Plaintiff because of his age, it should also be noted that Mr. Orgera is the same age as Plaintiff.
[11] Conn. Gen. Stat. § 52-577n(a)(2) provides, "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct... .").

A claim of invasion of privacy is considered an intentional tort.  *See O'Connor*, 90 Conn.App. at 64 (finding invasion of privacy "intrusion upon seclusion" claim was an intentional tort); *Singhaviroj v. Fairfield*, No. CV054007480S, 2011 WL 1176163 at *14-*15 (Conn. Super. Mar. 9, 2011) (finding false light invasion of privacy claim to be an intentional tort.)  As its name implies, a claim of intentional infliction of emotional distress is also an intentional tort.  *See Pane,* 267 Conn. at 669, 685–86; *Miner*, 126 F.Supp. at 194 ("the Town may not be liable under section 52-557n(a)(2)(A) for … alleged intentional infliction of emotional distress."); *Tavarez*, 2012 WL 1435284, at *6 (same).  Consequently, Counts Nine and Ten cannot be maintained against the City and it is entitled to summary judgment.

## I.      Plaintiff's Invasion Of Privacy Claim Fails.

The Connecticut Supreme Court has stated that "[t]he four categories of invasion of privacy are set forth in 3 Restatement (Second), Torts § 652A [1977] as follows: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public."  (Citation omitted; internal quotation marks omitted.) *Foncello v. Amorossi*, 284 Conn. 225, 234 (2007).  Plaintiff has not claimed that his name or likeness was appropriated, that his seclusion was intruded upon, or that he was placed in a false light.  As such, it appears that Plaintiff is claiming that unreasonable publicity was given to his private life.  In addition to the fact that the City cannot be liable for this intentional tort, as set forth above, this claim plainly fails on its merits.

As an initial matter, Conn. Gen. Stat. § 31-128f, which prohibits certain unauthorized disclosures of personnel files, does not provide a private cause of action.  It is presumed that no such cause of action is available where it has not been expressly provided by statute.  *See Esposito v. Connecticut College*, No. X04CV970117504S, 2000 WL 1337665, at *3 (Conn.

Super. Sep. 1, 2000) (holding no private cause available for violation of section 31-128f).  As

such, Plaintiff's invasion of privacy claim should be dismissed.  *See id.* (granting summary

judgment on invasion of privacy claim based on personnel file disclosure).

The claim also fails because it is not supported by the evidence.  Conn. Gen. Stat. § 31-

128f prohibits only unauthorized disclosure of personnel file to persons "not employed by or

affiliated with the employer…."  As set forth above, Plaintiff has no evidence that his personnel

file was provided to anyone outside of the City.  As such, his claim fails.  Moreover, his file was

subject to public inspection as a matter of law under the Freedom of Information Act.  Conn.

Gen. Stat. § 1-210(a) provides for disclose of public records, including public employee's

personnel files.  However, subsection (b)(2) sates that "Nothing in the Freedom of Information

Act shall be construed to require disclosure of…Personnel … files … the disclosure of which

would constitute an invasion of personal privacy."  Plaintiff has not alleged, nor is there any

evidence of, any particular information in his file the disclosure of which would be highly

offensive to a reasonable person.  Without such evidence, Plaintiff's claim fails.  *See Goodrich v.*

*Waterbury Republican-American, Inc.*, 188 Conn. 107, 133 (1982)  (unreasonable publicity

claim requires disclosure of "private fact") .

In addition, Plaintiff's claim of invasion of privacy requires "publicity, of a highly

objectionable kind, given to private information about the plaintiff …."  *Tarka v. Filipovic*, 45

Conn.App. 46, 53 (1997).  "Publicity" means "that the matter is made public, by communicating

it to the public at large."  *Starratt v. Spencer*, No. CV940140926S, 2002 WL 1459706, at *4

(Conn.Super. May 30, 2002).  The City is entitled to summary judgment on this claim because

there is no evidence that any information in his personnel file was actually disclosed to the public

at large.  *See, e.g., Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F. Supp. 2d 233, 257

(D.Conn. 2008) ("The Court grants summary judgment... because it finds no evidence whatsoever that [defendant] disclosed [plaintiff's] information to anyone, let alone to the requisite number of individuals to meet the 'public at large' standard."); *Pace v. Bristol Hosp.*, 964 F. Supp. 628, 631 (D.Conn. 1997) (holding that the fact that information became "common knowledge" in a hospital community did not satisfy the "publicity" requirement for a false light claim).

## J.     Plaintiff's IIED Claim Fails Because There Was No Extreme Or Outrageous Conduct.

In order to sustain a claim for IIED, a plaintiff must allege that (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of their conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of plaintiff's distress; and (4) the emotional distress sustained by plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253 (1986).  In addition to the fact that the City cannot be liable for this intentional tort, as set forth above, this claim plainly fails on its merits.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."  *Id.*  Additionally, in the employment context, the Connecticut Supreme Court has found, "the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  *Id.* at 254, n. 5 (quoting Prosser & Keeton, Torts, § 12 at 60 (5th ed. 1984)).

> Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Morrissey v. Yale University*, 268 Conn. 426, 428 (2004) (citation, internal quotation marks, and

brackets omitted.)  In this regard, "[e]mployees often find the conditions of their employment to

be unpleasant and even unjustifiable, but there is a distinction between the ordinary indignities of

the workplace and truly atrocious conduct [required to state a claim for IIED]."  *Nelson v. Yale

University*, No. CV010455318, 39 Conn. L. Rptr. 69, 2005 WL 1089168, at *3 (Conn. Super.

Apr. 5, 2005) (plaintiff's allegations that her immediate supervisor publicly ridiculed her, caused

disciplinary action to be filed against her for minor errors, ordered her to file false reports and

interfered with her job duties were insufficient to meet element of extreme and outrageous

conduct while allegations that other defendant ordered plaintiff to beg for her job and then

immediately fired her were sufficient to meet this element).

　　　　None of the conduct alleged by Plaintiff approaches anywhere near the threshold of being

"outrageous," "atrocious," or "utterly intolerable."  Indeed, courts have held that the elements of

this tort were not satisfied in cases with far more egregious facts alleged than in the present case.

For example, the *Greenhouse v. Yale University*, No. 3:05CV1429 (AHN), 2006 WL 473724

(D.Conn. Feb. 28, 2006) court held that alleged behavior much worse than that claimed in the

instant matter was not actionable.  In *Greenhouse*, the plaintiff, a drama school student, claimed

that her

> instructor...announced that he had changed the title [of a play] to "Metamorphoses
> Revisited Or Rock Out with Your Cock Out." And instructed the male actors to
> simulate masturbation while standing next to [Greenhouse].   This simulation
> actually occurred, to [her] great and obvious humiliation and distress, whereupon
> the instructor called out: "That was great! Now this time do it again, only really
> come!" As the male actor closest to [Greenhouse] began to simulate orgasm,
> [Greenhouse] fled the stage as another male student attempted to physically
> restrain her....
>
> [F]or the remainder of the academic year, the faculty and students subjected her to
> "macho" and "frat house" behavior and disparate treatment. Also, on one
> occasion, the Dean of the Drama School kissed her. On May 15, 2003, the Drama

> School finally dismissed Greenhouse, even though her work was "obviously superior to that of the male students in the program, none of whom were dismissed."

*Id.* at *2.  Noting that "[t]he court has an important gatekeeper function for such claims," this Court found that the defendant's conduct did not satisfy the requirement of extreme and outrageous conduct, and granted the defendant's motion to dismiss.  *Id.* at *3.

This decision is consistent with those of Connecticut state courts of all levels that require a very high showing to proceed on an intentional infliction of emotional distress claim, one that cannot be met in this case.  For example, in *Dollard v. Board of Education*, 63 Conn.App. 550, 552-53 (2001), the plaintiff alleged that the defendants hypercritically scrutinized every aspect of her work and personal life, publicly admonished her and organized a plan to force her to resign.  Despite those allegations, this court determined that the defendants' actions did not constitute outrageous or extreme conduct.  *Id.* at 554.  In *Appleton v. Board of Education*, 254 Conn. 205 (2000), the court did not find extreme or outrageous conduct where the plaintiff was forced to resign, subjected to psychiatric evaluations, escorted off employer's premises by police and subjected to condescending comments made by the employer.  *See id*. at 211; *see also Williams v. Deloitte Servs., LP*, No. 3:09cv17(JCH), 2009 WL 3571365, at *3 (D.Conn. Oct. 26, 2009) (IIED claim dismissed because allegations of preferential treatment of white employees, unfair disciplinary actions, unfair work assignments, negative performance reviews, and singling out fell within the category of "routine employment actions" and thus did not rise to the level of extreme or outrageous); *Bator v. Yale-New Haven Hospital*, 73 Conn.App. 576, 577-78 (2002) (Court striking emotional distress claim where employee was allegedly subjected to abusive and disparate treatment, including unfair pay and discipline, where supervisors falsely accused him of endangering a patient's life, suggested that he seek psychiatric help and recommended that he

- 36 -

attend anger management classes.); *Delaney v. Institute of Living, et al.*, No. CV020097157S, 2002 WL 1559043, at *7, 32 Conn. L. Rptr. 336 (Conn.Super. Jun. 18, 2002) (motion to strike granted on allegations that defendants: forced plaintiff to leave her job; subjected her to an abusive and hostile work environment in which hostile glances, abusive language and contemptuous behavior were the norm; constantly demeaned her in front of others; unjustly criticized virtually every aspect of her work performance; falsely accused her of missing staff meetings; and ordered to remove from her work area all articles of personal property including religious objects); *Marczeski v. Brown*, No. 3:02–CV–894(GLG), 2002 WL 31682175, at *7 (D.Conn. Nov. 12, 2002) (no extreme and outrageous conduct where allegations included assertions that plaintiff's vehicle was being followed); *Valenti v. Carten Controls Inc.*, No. CIV. 3:94CV1769 AHN, 1997 WL 766854, at *9 (D.Conn. Dec. 4, 1997) (no outrageous behavior where plaintiff claimed defendants were "criticizing her work unjustly, speaking to her on numerous occasions in a loud, angry, accusatory voice and pounding his fists, his demeaning attitude towards her, and his frequent allusion to her option to quit if she was unhappy."); *Valencia v. St. Francis Hosp. & Med. Ctr.*, No. CV 940538867S, 1996 WL 218760, at *8 (Conn.Super. Apr. 3, 1996) (no extreme and outrageous conduct found where defendant "grabbed plaintiff's arm in front of patients and co-workers, pulled her in a back room and yelled at her."); *Scandura v. Friendly Ice Cream Corporation*, No. CV 930529109S, 1996 WL 409337, at *3 (Conn.Super. Jun. 26, 1994) (no extreme/outrageous conduct where plaintiff alleged her supervisor was "making her furnish daily sales projections for the restaurant she managed, disallowing her from taking a scheduled vacation for which she had made airline reservations, and ridiculing her 'unjustifiably... often obscenely,' and in a manner which insulted her integrity,

both before and after he learned that she suffered from a medical condition that made her particularly susceptible to emotional distress.").

Plaintiff's allegations are, at best, that he was wrongfully disciplined, transferred (in an effort to help him, and without losing any pay or rank), and called a name by some co-workers. Because the Plaintiff's allegations do not, as a matter of law, approach the level of being extreme or outrageous, the City is entitled to summary judgment as to Count Ten.  *See Tavarez*, 2012 WL 1435284. at *6 (summary judgment because no evidence of outrageous conduct).

### K.       Plaintiff's Indemnity Claims Fail.

General Statutes §§ 7-101A and 7-465(a) do not impose liability upon a municipality for breach of any statutory duty of its own, but rather impose upon a municipality the obligation of derivative liability for indemnification for legal liability arising out of certain tortious conduct of municipal employees.  *See Ahern v. City of New Haven*, 190 Conn. 77 (1983).  General Statutes § 7-465(a) provides in relevant part:

> Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality…all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any willful or wanton act of such employee in the discharge of such duty….

Conn.Gen.Stat. § 7-101A similarly provides:

> Each municipality shall protect and save harmless…any municipal employee, of such municipality from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence, or for alleged infringement of any person's civil rights, on the part of such officer or such employee while acting in the discharge of his duties.

Plaintiff has asserted that Attorney Larobina and Messrs. Scacco and Orgera are liable to Plaintiff because they retaliated against him for allegedly exercising free speech and intentionally inflicted emotional distress upon him, and, in the case of Mr. Scacco only, invaded his privacy. Plaintiff seeks to hold the City responsible for paying whatever sums these defendants are found to be liable for.  However, because those claims against the individual defendants fail, the City cannot be held derivatively liable under Section 7-465.  *See, e.g., Wu v. Fairfield*, 204 Conn. 435, 438 (1987) ("in a suit under 7-465, any municipal liability which may attach is predicated on prior findings of individual negligence on the part of the employee...."); *Elinsky v. Marlene*, No. CV960557659, 1997 WL 729102, at *8 (Conn.Super. Nov. 14, 1997) (striking 7-465 counts against municipality because municipal employees were found immune from claims that were the basis for liability).[12]

Moreover, although there is no evidence whatsoever that any of the individual defendants engaged in the intentional torts alleged in Counts Nine and Ten, Plaintiff's indemnity claim fails because the City would not liable to indemnify employees for their intentional acts even if they existed.  *See West Haven v. Hartford Ins. Co.*, 221 Conn. 149, 159 (1992) (A municipality "pursuant to § 7-101a ... is not liable for indemnification of any financial loss resulting from a malicious, wilful or wanton act [of its municipal employee]."); *Avoletta v. Torrington*, 133 Conn.App. 215, 224 (2012) ( "Section 52–557n(a)(2)(A)[13] expressly provides that a political subdivision of the state shall not be liable for acts or omissions of its employees that constitute 'criminal conduct, fraud, actual malice or wilful misconduct ... the term 'wilfulness' is synonymous with 'intentional.'" (citations omitted).).  As such, the City is entitled to summary

---

[12] With respect to the claims against Attorney Larobina, and Messrs. Scacco and Orgera, the City specifically refers the Court to the summary judgment briefs of the Co-Defendants for more detailed arguments as to why they cannot beheld liable under Counts One, Nine and Ten.
[13] Conn. Gen. Stat. §§ 7–465 and 52–557n are "coextensive."  *Grady v. Somers*, 294 Conn. 324, 346–47 (2009).

judgment as to Count Eleven.

      **L.**      **Plaintiff Cannot Claim Punitive Damages.**

      In his Prayer for Relief, the plaintiff seeks, inter alia, punitive damages against the City. (Prayer for Relief, ¶¶ 3-5.)  "Municipalities and municipal officials who are sued in their official capacities are immune from punitive damages under the civil rights laws."  *M.O.C.H.A. Soc., Inc. v. City of Buffalo*, 199 F.Supp.2d 40, 52 (W.D.N.Y. 2002) citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) and *Deepwells Estates Inc. v. Incorporated Village of Head of Harbor*, 973 F.Supp. 338, 351 (E.D.N.Y. 1997), appeal dismissed, 162 F.3d 1147 (2d Cir. 1998).  Therefore, the City is entitled to summary judgment as to Plaintiff's claim for punitive damages.

      Furthermore, the Connecticut Appellate Court has held that it is impermissible to award punitive damages against a municipality on public policy grounds.  *See City of Hartford v. International Ass'n of Firefighters, Local 760*, 49 Conn.App. 805, 817-819 (Conn.App. 1998) (stating "In denying punitive or exemplary damages, most courts have reasoned that while the public is benefited by the exaction of such damages against a malicious, willful or reckless wrongdoer, the benefit does not follow when the public itself is penalized for the acts of its agents over which it is able to exercise but little direct control."); *see also Trimachi v. Connecticut Workers Comp. Comm.*, 2000 WL 872451, at *3-*5 (Conn.Super. 2000) (striking punitive damages claim based on *International Ass'n* and other considerations, including those related to statutory construction).  Accordingly, the Plaintiff cannot recover punitive damages against the City, and it is entitled to summary judgment as to the Prayer For Relief insofar as it seeks such damages.  *See Walsh v. Lebanon Bd. of Educ.*, No. 3:11cv1947 WWE, 2013 WL 425092, at *9 (D.Conn. Feb. 4, 2013) (dismissing punitive damages claims against municipality for state and federal statutory claims and common law claims).

**IV.    CONCLUSION**

WHEREFORE, based on the foregoing reasons, the City's Motion for Summary

Judgment should be granted.


DEFENDANT,
CITY OF STAMFORD


By:    ___/s/ Jonathan C. Sterling_____
       James M. Sconzo (ct04571)
       Jonathan C. Sterling (ct24576)
       JORDEN BURT LLP
       175 Powder Forest Drive, Suite 301
       Simsbury, CT 06089-9658
       Tel:  (860) 392-5000
       Fax:  (860) 392-5058
       E-mail:   jms@jordenusa.com
                 js@jordenusa.com

## <u>CERTIFICATION</u>

       This is to certify that on this 13th day of September 2013, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system:

Richard Freeth, Esq.
Freeth & Clay, LLP
1 Atlantic Street, Suite 320
Stamford, CT  06901
*Attorney for Plaintiff*

Lewis H. Chimes
Law Office of Lewis Chimes LLC
45 Franklin Street
Stamford, CT 06901
*Attorney for Michael Scacco*

Alan Neigher
Sheryle Levine
Byelas & Neigher
1804 Post Road East
Westport, CT  06880
*Attorney for Ernest Orgera*

                                  /s/   Jonathan C. Sterling
                                    Jonathan C. Sterling

259818